PEORIA MANUFACTURING COMPANY, Appellant, v. BAIN MANUFACTURING COMPANY, Respondent.

### Kansas City Court of Appeals, May 30, 1898.

1. **Contracts:** TWO ORDERS: ACCEPTANCE: RESCISSION. Where an order was made for twine and a different order on the same day for rope, an acceptance for both orders in one letter will not constitute an indivisible contract so that the countermand of the order made for the twine will release the liability to furnish the rope.

2. **Trial Practice:** SETTLEMENT: JURY QUESTION: EVIDENCE. There was no evidence in this case supporting a settlement, and besides the question was submitted to the jury and passed upon by them.

3. **Contract:** BREACH OF: MEASURE OF DAMAGES. As a general rule the measure of damages for breach of contract to furnish goods is confined to the difference in the contract price and the price at which the goods might have been bought, but in this case under the pleadings and the evidence defendant was entitled to submit the question of special damages to the jury.

*Appeal from the Carroll Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

HALE & SON for appellant.

(1) We insist that after the orders were accepted by plaintiff, not separately but jointly, that each party became and was liable to carry out the arrangement as

agreed on; that is, plaintiff was bound to sell and ship both the twine and the rope—and defendant was bound to receive and pay for the same, and that a refusal of either party to carry out the arrangement thus agreed on was a violation of the contract or contracts and released the opposite party from any further obligation. (2) Plaintiff was undoubtedly led to believe from defendant's letters that it was ratified with the statement of account by plaintiff and shipped the goods on the faith of that impression thus made by defendant. If it had any other unsettled account with plaintiff they should have so stated. Plaintiff had the right to make that condition as to the sale and shipment of their own goods. Lindell v. McLaughlin, 30 Mo. 33; Pelkington v. Ins. Co., 65 Mo. 173. (3) If plaintiff was legally bound to ship the rope and failed to do so the measure of damages would be the difference between the contract price and the price which the defendant would be compelled to pay for the same article on the date when it should have been delivered. As to the measure of damages in such cases, see 3 Parsons on Contract [7 Ed], top of page 204.

VIRGIL CONKLING for respondent.

(1) These two orders constituted two separate and independent contracts. (2) As to the settlement pleaded, it was nothing more or less than a settlement of the corn harvester account. The jury so found and we submit that the finding was based on the facts. (3) The text-books say that the measure of damages for breach of sale contract is not confined to the difference in market price; that special consequential damages may also be recovered. Tiedeman on Sales, sec. 336; Benjamin on Sales [6 Ed.], sec. 870; Water Co. v. Bathe, 41 Mo. App. 285; Hammer v. Schoenfelder, 47 Wis. 455.

Peoria Mfg. Co. v. Bain Mfg. Co.

ELLISON, J.—Plaintiff sued defendant for a balance on account. Defendant set up a counterclaim and certain damages growing out of an alleged breach of contract by plaintiff. The judgment below was for defendant for $21.53. Plaintiff did business at Peoria, Illinois, and defendant at Carrollton, Missouri.

It appears that on October 9, 1891, defendant ordered in writing of plaintiff ten thousand pounds of sisal rope at six cents per pound and that afterward, on the same day, defendant ordered in writing of plaintiff fifteen thousand pounds of colored sisal STATEMENT. twine. The first order was made as the result of an agreement between one of plaintiff's salesmen and the manager of the defendant company. The second order was made by the secretary of the defendant company to the same salesman. Each order was to be shipped to defendant March first following. Both orders were sent to plaintiff. They were duly accepted by letter from plaintiff to defendant. In January following, defendant countermanded the the order for the twine, stating that it had been ordered conditionally. This countermand was duly received and the countermand acknowledged as of both twine and rope. Defendant immediately on January 20, wrote that the countermand related to the twine only, and requested that the rope be shipped without delay. Plaintiff made no reply to this, when on February 1, following, defendant telegraphed asking if the rope had been shipped, that they must have it quick. On the same day plaintiff telegraphed in answer: "No, order calls for March first shipment. Will you be over this week to make settlement." (The last sentence refers to settlement of a harvester machine account between plaintiff and defendant.) The correct reading of this telegram is not agreed between the parties. Plaintiff reads it with comma omitted between the

words, "No" and "order," so that it would read that there was no order for March 1 shipment. But we have no doubt, as gathered from the correspondence and its subject-matter, that defendant interpreted the telegram correctly. The order was for March 1st. Defendant had telegraphed February 1, asking if rope had been shipped, and plaintiff answered no, that the order was for March 1. Nothing further seems to have transpired until the middle of the month when plaintiff wrote defendant the following letter:

"PEORIA, 2–15–92.
*"Bain M'f'g Co., Carrollton, Mo.*

GENTLEMEN:—Please give us instructions what we shall do with the corn harvesters. We will hold them subject to your order, or will ship them back to you. We will fill an order for rope at price named you last fall, but it will be necessary for you to straighten up the corn harvester matter first.

"PEORIA M'F'G Co."

Defendant failing to straighten up the corn harvester account, plaintiff failed to deliver the rope it had agreed to ship on March 1.

Here the correspondence ceased for over a year. It was renewed on April 1, 1893, as follows:

"CARROLLTON, Mo., April 1, 1893.
*"Peoria M'f'g Co., Peoria, Ill.*

"GENTLEMEN:—Please quote us your lowest price on 3-4, 5-8 and 7-8 pure sisal rope, and oblige,

"BAIN M'F'G Co."

Plaintiff replied with the following:

"PEORIA, April 4, 1893.
*"Bain M'f'g Co., Carrollton, Mo.*

"GENTLEMEN:—Replying to your favor of the 1st inst., we are glad to quote you sisal rope, 3-4, 5-8, 7-8, at 8 cents f. o. b. Peoria rope has been advancing very fast for the last two weeks.

"PEORIA M'F'G Co."

Thereupon defendant·on April 5, made an order for rope mentioned in letter. Before accepting this order plaintiff insisted on a settlement of the harvester account, and the following letters were exchanged:

"PEORIA, Apr. 7, 1893.

"*Bain M'f'g Co., Carrollton, Mo.*

GENTLEMEN:—We have your esteemed favor of the 5th ordering 5,000 lbs. 3-4 inch rope, 5,000 lbs. 7-8 inch rope and 500 lbs. 5-8 sisal at 8 cents. Our account stands at the present time $208.48 in your favor. We have two harvesters to be returned to· you which we have shipped to-day and you have two which you have shipped to us which is a stand off. If there are no more harvesters returned to us which we can not make settlement for, our account would be in your favor $208.44 which we are willing for you to deduct on the rope account and we will enter the rope for immediate shipment and give you ninety days time on the balance without interest. If this is entirely satisfactory and a perfect understanding, we will ship the rope. Please wire us or write us immediately.

"PEORIA M'F'G Co."

"CARROLLTON, Apr. 14–93

"*Peoria M'f'g Co., Peoria, Ill.*

"GENTLEMEN:—We have your favor of the 7th inst. Please ship us 3,000 lbs. of 3-4 inch sisal rope, and 3,000 lbs of 7-8 inch sisal rope, both at 8 cents. You have the corn harvester account a little mixed, but the errors are immaterial. We hope you will have no occasion to return any more of the harvesters but we will take pleasure in fulfilling to the letter every agreement or obligation concerning them. We can not use the rope unless we receive same by April 25th.

"BAIN M'F'G Co."

"PEORIA, Apr. 17, 1893.

*"Bain M'f'g Co., Carrollton, Mo.*

"GENTLEMEN:—Your letter of the 14th just received. Please write us immediately the difference between our account and yours and then we will enter your order for the rope for immediate shipment, providing we agree upon the old matter.

"PEORIA M'F'G CO."

"CARROLLTON, Apr. 18, 1893.

*"Peoria M'f'g Co., Peoria, Ill.*

"GENTLEMEN:—Replying to yours of the 17th inst. will say that as we understand it there is a balance of $208.44 due us from old corn harvester deal. If this is satisfactory, ship the rope immediately or cancel the order as we can not use the rope at all unless we get it within a few days. We are now holding shipments on account of shortage in rope.

"BAIN M'F'G CO."

"PEORIA, Apr. 19, '93.

*"Bain M'f'g Co., Carrollton, Mo.*

"GENTLEMEN:—We have yours of the 18th, have entered your order for 3,000 lbs. each of 3-4 and 7-8 sisal rope, and same will go forward promptly. Please accept thanks for the order.

"PEORIA M'F'G CO.

"Per JOHN C. HANNA."

This closed the correspondence, and plaintiff shipped the goods. When the bill was presented, defendant deducted the agreed sum of $208.48, on the corn harvester account, and demanded an additional credit on account of the breach of contract for rope of March 1, 1892, the counterclaim pleaded in the answer.

Plaintiff's first proposition in support of his appeal is that since plaintiff accepted at one time the two orders together, one for rope and the other for twine,

that the two orders became one indivisible contract, and that when defendant countermanded the order for the twine, it released plaintiff from the obligation to ship the rope. This objection to the judgment may be disposed of by the statement that there is nothing to show that plaintiff accepted the two orders as one contract. On the contrary their letter of acceptance recognizes that they were separate orders. It reads that, "We are in receipt of your orders for 10,000 pounds of rope and 15,000 pounds of twine," etc., thus showing a recognition of separate orders, one for twine and one for rope. The fact that the acceptance of both was in one letter is of no significance whatever.

*CONTRACTS: two orders: acceptance: rescission.*

It is next objected that the case shows that whatever difference existed between plaintiff and defendant as to the rope was adjusted and settled or compromised. We have examined the record as to this and do not find any evidence tending to support such claim. The separate and independent transaction between the parties relating to the harvesters was adjusted. But we do not find where this connects with the subject-matter of the rope and twine transaction. It is true there are some words in the letters from April 7, 1893, to April 19, 1893, which might, disconnectedly, be taken to refer to the difference between the parties as to the rope which was ordered for shipment March 1, 1892. But it is evident those words refer either to the separate harvester account or to the last rope account then being under negotiation. It is however worthy of notice in this connection that the question of whether there had been a settlement of the rope account in suit was submitted to the jury in one of defendant's instructions.

*TRIAL practice: settlement: jury question: evidence.*

The next objection relates to the damages allowed

defendant. Plaintiff's contention is that the damage should have been confined to the difference in the contract price and the price at which the rope might have been and was bought by defendant. This is the rule ordinarily. But besides having to purchase of other parties the quantity of rope contracted of plaintiff, at an advanced price, defendant was put to other special expense consequent upon the failure of plaintiff to ship by March first. This special damage was set up in the second count of defendant's answer and was supported by evidence tending to prove it. It was therefore not error to give defendant's instruction number 5, directing the jury to allow whatever damage of this nature they believed to have been shown by the evidence. Water Co. v. Bathe, 41 Mo. App. 285; Hammer v. Schoenfelder, 47 Wis. 445; Tiedeman on Sales, sec. 336; Benjamin on Sales, sec. 870.

*CONTRACT: breach of: measure of damages.*

We find no error in the record and hence affirm the judgment. All concur.