## GILL & FISHER, Appellants, v. JOHNSON-BRINK-MAN COMMISSION COMPANY, Respondents.

### Kansas City Court of Appeals, April 30, 1900.

1. **Sales: PLACE OF DELIVERY: CARRIER AS AGENT.** Where a purchaser in Baltimore buys corn at Kansas City and selects the carrier by which shipment is to be made, the delivery to him is complete when made to the carrier who is his agent to receive and transport the same.

2. ———: ———: **PAROL EVIDENCE TO VARY WRITTEN CONTRACT.** A memorandum of sale required the corn sold to be billed in the purchaser's name. Parol evidence that the understanding was that it was to be shipped in the seller's name is inadmissible, since it varies the terms of the contract, which is too specific to admit of two interpretations.

3. ———: **DAMAGES: TIME OF ASSIGNMENT: DELIVERY: AGENCY.** A purchaser in Baltimore bought corn by his agent in Kansas City and directed it shipped by a certain carrier within fifteen days. The seller did not deliver as agreed which the purchaser first, in fact, learned ten days after the expiration of the time. Held: The measure of damages was the difference between the contract price and the market price at Kansas City on the last day of delivery, since Kansas City was the place of delivery and the seller's agent or his carrier must have known of the default on the last day of delivery.

4. ———: **DELIVERY: SPECIAL DAMAGES.** Before the purchaser can recover special damages, the special circumstances indicating that special damages will follow default must be communicated to the vendor.

Appeal from the Jackson Circuit Court.—*Hon. James Gibson*, Judge.

AFFIRMED.

*Meservey, Pierce & German* for appellant.

(1)    The court erred in giving to the jury instruction No. 1, asked for by defendant, and in refusing to give to

the jury, at plaintiff's request, instructions numbered 1, 2, 3, 4 and 6. In ordinary cases of breach of contract of sale by the seller, the measure of damages of the buyer is the difference between the contract price and the market value of the goods at the time and place of delivery. 21 Am. and Eng. Ency. of Law, 612; Tiedeman on Sales, sec. 335; Tiffany on Sales, sec. 128; Benj. on Sales, sec. 870; Mfg. Co. v. Mfg. Co., 76 Mo. App. 76; Wire Co. v. Hardware Co., 97 Mo. 289. (2) But where the seller takes the bill of lading to his own order and attaches it to a draft drawn on the buyer, transmitting the draft to a bank in the city where the buyer resides, it is held that both parties contemplate delivery at said city and payment of the price upon delivery. And in such cases the measure of damages for failure to deliver the goods is the difference between the contract price and the market price at that city when the delivery ought to have been made, less the freight. Erwin v. Harris, 87 Ga. 333; Ramish v. Kirschbraun, 109 Cal. 659; Andrews v. Schreiber, 93 Fed. Rep. 367; Bank v. Crocker, 111 Mass. 163. (3) Instruction number 5 asked for by plaintiffs should have been given to the jury. No rule is better settled then that where the circumstances are such that the buyer suffers unusual damages by reason of the breach of the contract and such circumstances are known to the seller at the time the contract is made, such unusual or special damages may be recovered in addition to those fixed by the general rule. Mfg. Co. v. Mfg. Co., 76 Mo. App. 76; Shouse v. Neiswaanger, 18 Mo. App. 236; Challis v. Witte, 2 Mo. App. Rep. 715; Oil Co. v. Schlens, 59 Md. 31; Hadley v. Baxendale, 9 Exch. 341; Cockburn v. Lumber Co., 54 Wis. 619; Durst v. Burton, 47 N. Y. 167; Newmark on Sales, sec. 398; Boyd v. Quinn Co., 40 N. Y. Supp. 370; Boyd v. Quinn Co., 41 N. Y. Supp. 391; Cockburn v. Lumber Co., 54 Wis. 619.

*Gage, Ladd & Small* for respondent.

(1) The uniform holding is that the measure of damages for failing to ship is the difference between the contract price and the market price at the time when and place where the corn was to be delivered, and the instruction of the court below was correct. Drug Co. v. McMahan, 50 Mo. App. 25; Scharff v. Meyer, 133 Mo. 428; Griffith v. K. C., etc., Co., 46 Mo. App. 539; Boyd v. Quinn Co., 40 N. Y. Supp. 7, p. 370. (2) Plaintiffs were not entitled to any special or peculiar measure of damages. The petition did not plead, nor did the evidence show, that plaintiffs bought this corn to fill any particular contract or that defendant had any knowledge of any special use that plaintiffs had for the corn.

ELLISON, J.—On September 30, 1898, the defendant, living at Kansas City, Missouri, sold to plaintiffs, living at Baltimore, Maryland, ten thousand bushels of corn as per the following contract:

"Office of the F. P. Smith Commission Co.
     "Rooms 421-422-423-424 Exchange Bldg.
               "Kansas City, Mo., Sept. 30. 1898.
     "Bought of Johnson-Brinkman for Gill & Fisher, Baltimore, Md., 10,000 bushels No. 2 Mixed corn at 26 & 1-2 cts. F. O. B. Q. cars Kansas City, Kansas City grades, destination weights, 15 days shipment.
     "Bill acct. Gill & Fisher, Baltimore, Md., care B. & O. S. W. Ry., East St. Louis. Draw on Gill & Fisher, Baltimore, Md., without exchange. Please load large cars and 10 per cent over marked capacity. Kindly confirm above to them to-day by mail.
               "Johnson-Brinkman Commission Co.
                         A. D. J. Pt."

Pursuant to this memorandum the defendant sent the plaintiffs the following letter:

"Kansas City, Mo., Sept. 30, 1898.
"Messrs. Gill & Fisher, Baltimore, Md.

"Gentlemen:—We confirm sale to you this day, through F. P. Smith Commission Co., 10,000 bushels No. 2 mixed corn at 26 & 1-2 cts.   F. O. B. Q. cars Kansas City, Kansas City grades, destination weights, 15 days shipment.

"They instruct us to bill to Gill & Fisher, Baltimore, Md., care B. & O. S. W. Ry., East St. Louis and draw on you at Baltimore, without exchange.

"Yours truly,
"Johnson-Brinkman Commission Co."

Afterwards defendant delivered, as required by the contract, 3,900 bushels of the corn, except that it billed the corn in its own name and indorsed the bill to plaintiff with draft attached for the purchase price and forwarded to a bank at Baltimore for collection.   Defendant failed to deliver the remaining 6,100 bushels within the fifteen days mentioned in the contract, or, at any other time.   Plaintiffs did not learn of defendant's failure until about ten days after the time expired and then, being in need of the corn, went on the market at Baltimore and purchased the number of bushels, so remaining undelivered by defendant, at a large advance over the contract price.   Plaintiffs then brought this action laying their damages at the advance price they paid at Baltimore.   Defendant conceded at the trial that plaintiffs were entitled to recover some damages, but contended the amount should be limited to the difference in the price named in the contract and the market price in Kansas City, Mo., on the last day it should have been delivered. Plaintiffs position was, and is, that the difference in price should be governed by the market at Baltimore when they

discovered that defendant had refused to comply with the contract. The circuit court took defendant's view and plaintiffs appeal.

The rule is, that where the delivery of personal property is to be made at the place of sale then the measure of damages to the purchaser for the failure of the seller is the difference between the contract price and the market price at that place and at the time agreed. But where there is a sale of goods at one place to be shipped to the purchaser at a distant place, a question frequently arises as to which is the point of delivery. It is well settled that if the purchaser selects the carrier by which the shipment is to be made the delivery to the purchaser is complete when made to the carrier. The latter is deemed the purchaser's agent to receive and transport. 2 Sedgwick Dam., secs. 734-738; Scharff v. Meyer, 133 Mo. 428; Griffith v. K. C. Co., 46 Mo. App. 539; Meyer Bros. v. McMahan, 50 Mo. App. 25.

2. In this case the written contract, as set out above, provides not only that the shipment shall be by the "Q" carrier, but directs how the cars shall be loaded. The place of delivery was therefore to be at Kansas City.

But plaintiffs claim that in point of fact the corn was to be billed to defendant and that plaintiffs were not to have title to it until it arrived in Baltimore and was paid for. That Baltimore was therefore the place of delivery. They claim that defendant so shipped the 3,900 bushels. That it took the bill of lading in its own name, indorsed it and sent it with draft attached to a bank in Baltimore. The trial court ignored this view in the instructions; holding, in effect, that evidence of such understanding would contradict, alter and vary the terms of the written contract and was therefore not to be allowed to control. We think that was the proper construction of the law and the contract. The contract clearly specifies that the corn was to be shipped

on the Q cars and that it was to be billed to plaintiffs. To allow evidence that it was to be billed to defendant would directly contradict the writing.

But plaintiffs insist that such was the understanding of plaintiffs, and that defendant knew they so understood it, and ought not now to be allowed to claim a different understanding, or to place a different interpretation on the agreement. When a contract is not sufficiently specific to be certainly interpreted, the understanding of the parties to it will fix its meaning; especially will their action under it. But where its terms are clear—not subject to two interpretations—parol evidence is not admissible, since that would simply substitute a verbal contract for a written one.

After the court rejected plaintiffs' view that Baltimore was the place of delivery, they then sought to fix the time when the market value at Kansas City should be ascertained at the time when plaintiffs learned that defendant had not, and would not, comply with the contract, which they did not learn until about ten days after the contract time expired, corn then being higher. The court refused this. The reason for fixing the market value as the measure of damage is that it is supposed the buyer could make himself whole by going into the market and getting what the seller has failed to deliver. To do this, plaintiffs contend, he must be aware of the seller's failure. And where he lives at a distant place he could not be expected to ascertain the default until time required for transportation had expired. If we should concede this proposition, it would not aid plaintiffs. For they made their purchase through their agent or representative at Kansas City and he should be presumed to know whether the contract was complied with on the day it should have been. It was the same as though plaintiffs were personally present. If it be said that this agent was only for the single purpose of the isolated act of purchase, yet the contract provides for still another agent, viz: the carrier.

In these circumstances we think the court was justified in refusing to place the time beyond the last day for delivery.

Plaintiffs also sought to recover special damages. This can be done where the circumstances of the sale justify it. Mfg. Co. v. Mfg. Co., 76 Mo. App. 76. If there are special circumstances communicated to the seller whereby he must be presumed to contemplate special damages will follow his default then he will be liable to such damages. Benjamin on Sales, secs. 870, 871. The record fails to put plaintiffs within this rule, either in pleading or evidence.

The judgment will be affirmed. *Smith, P. J.,* concurs; *Gill, J.,* absent.