Bowman & Co. v. Lickey.

H. C. BOWMAN & COMPANY, Plaintiffs in Error, v. F. M. LICKEY, Defendant in Error.

**Kansas City Court of Appeals, December 3, 1900.**

1. **Fraud: CONSPIRACY BY BORROWER: EVIDENCE: DEMUR-RER.** The evidence relating to a conspiracy of a borrower and certain abstractors with the agent of a loan company is reviewed and it is held that a demurrer as to the borrower was properly sustained by the trial court.

2. **————: ————: ————: INSTRUCTION: AFFIDAVIT.** An instruction hypothecating the liability of a borrower by reason of a conspiracy, should have evidence to support it, and an affidavit of the borrower so altered as to contradict the real ·statement of the affidavit is a forgery and can not bind.

3. **Counterclaim: SET-OFF: TORTS: STATUTE: LENDER AND BORROWER.** A counterclaim may be interposed as a defense whether plaintiff's action be for tort or upon contract if it arise out of the same transaction or be connected with the subject of the action; and so a borrower sued by the lender for conspiracy in failing to satisfy certain prior mortgages with the borrowed money, may set up that the lender had sold his note before due and that his agent converted the borrowed money before its delivery to the borrower and so the former is indebted to the latter to the amount of the conversion.

4. **Lender and Borrower: AGENCY: CONVERSION: DELIVERY: INSTRUCTION.** A lender made the check for the loaned money to his agent and the borrower instructing the former to see the prior mortgages released before turning it over to the borrower. The agent secured the borrower's indorsement on the check and then converted the money to his own use without satisfying the mortgages. Held, there was no delivery of the money to the borrower.

5. **————: ————: SUBAGENT: EVIDENCE.** While an agency may not delegate his authority yet if he employ a subagent to perform his ministerial duties, such as soliciting loans, the declarations of such subagent while engaged in such transactions are competent evidence against the principal.

6. ———: TAKING SECURITIES OF AGENT: ELECTION OF
REMEDIES: ESTOPPEL. Where, after a lender's agent had con-
verted the loan, he at another agent's suggestion conveyed certain
securities to the borrower, who only consented to the transaction on
the condition that it would enure to the benefit of the lender and
with the understanding that the latter should make him whole, the
doctrine of the election of remedies does not apply to the borrower
and he is not estopped to pursue his remedy against the lender, es-
pecially, where the securities are worthless.

Error to the Grundy Circuit Court.—*Hon. P. C. Stepp,*
Judge.

AFFIRMED.

*Johnson, Rusk & Stringfellow* for plaintiffs in error.

(1) Plaintiffs' objection to the introduction of any evi-
dence in support of defendant's alleged counterclaim should
have been sustained. Barnes v. McMullins, 78 Mo. 260;
Vaughan v. Rupple, 69 Mo. App. 583; Woodward v. Con-
der, 33 Mo. App. 147. (2) Plaintiffs' instruction number
3 in the nature of a demurrer to defendant's evidence should
have been sustained. The evidence proved two things, either
of which is sufficient to defeat defendant's counterclaim:
(a) That defendant indorsed the check and entrusted it to
Nagley, relying on Nagley's promise to perform for him the
contracted obligation of discharging the Wolz mortgages;
(b) that this encumbrance had not been removed when the
suit was tried. (2) Plaintiffs' instructions to the effect that
if Nagley was acting as the agent of defendant as to cashing
the check and applying the proceeds the judgment must be
for plaintiffs on the counterclaim should have been given.
The check being payable to defendant and requiring his in-
dorsement he controlled its collection and by indorsing and

delivering it to Nagley with the agreement that Nagley should cash it. He took control of it and could have no further claim upon plaintiffs. May v. Ins. Co., 72 Mo. App. 286; Robinson v. Jarvis, 25 Mo. App. 421; Bank v. Bank, 76 N. W. Rep. 430; Inv. Co. v. Preston, 24 So. Rep. 707; Mtg. Co. v. King, 16 So. Rep. 889; Bank v. Dunbar, 118 Ill. 625; Nolte v. Hulbert, 37 Ohio St. 445; Fitzsimmons v. Express Co., 40 Ga. 330; Engleman v. Rense, 61 Mich. 395. (4) Plaintiffs' instruction number 6 should have been given. It can not be said that there was no evidence of fraud on defendants' part. No one can read the record without finding many things that should be submitted to the triers of the facts upon this issue. (5) For the same reason defendant's instruction number 1 in the nature of a demurrer to the evidence should have been refused. (6) An agent's act will not bind the principal where he colludes with the other parties to defraud the principal. Hickman v. Green, 123 Mo. 165; Smith v. Farrell, 66 Mo. App. 8; Lewis v. Slack, 27 Mo. App. 119; Campbell v. Crowley, 56 S. W. Rep. 373; Scripture v. Mortgage Co., 49 S. W. Rep. 644. Where one of two parties must suffer, the loss must fall upon him whose negligence brings the loss about. Cummings v. Hurd, 49 Mo. App. 139. (7) Defendant collected $338 from Nagley. He also took an assignment for the balance ($800) of an interest in an estate in Ohio. He was still holding to this at the trial and said upon the stand that he proposed to hold it until he got his money out of plaintiffs, when he would be willing to turn it over to them. This precludes him from recovering against plaintiffs. Where a party has two inconsistent remedies and chooses one he must abandon the other. If one having recourse against a principal and his agent chooses to hold the agent he releases the principal. Milling

Co. v. Walsh, 20 Mo. App. 107; Lapp v. Ryan, 23 Mo. App. 436; Com. Co. v. Railroad, 126 Mo. 344; 1 Am. and Eng. Ency. of Law (2 Ed.), 1138; Paterson v. Gandesequi, 15 East. 62; McLain v. Fickle, 62 N. W. Rep. 753; Schnaitman v. Noble, 75 La. 124; Fowler v. Bank, 113 N. Y. 450; Grocery Co. v. Bank, 24 So. Rep. 389; Ewells Evanson Agency Star., p. 449, et seq. One can not retain the agent's individual note and recover against the principal. Schepflin v. Dessar, 20 Mo. App. 569. This discharges the principal as a matter of law. Packing & P. Co. v. Tucker, 8 Mo. App. 95, and cases cited. It does not matter that the choice made brings no relief. 6 Am. and Eng. Ency. of Law (1 Ed.), 250; Goss v. Mather, 46 N. Y. 689; Farwell v. Myers, 59 Mich. 179. It is immaterial in what way the creditor makes the election, whether by taking the note of the agent or by bringing suit. Sessions v. Block, 40 Mo. App. 569. If the two courses are inconsistent, that settles it. Bensieck v. Cook, 110 Mo. l. c. 182; Long v. Long, 111 Mo. 12; Nanson v. Jacob, 93 Mo. 331, and cases cited; Dry Goods Co. v. Warden, 151 Mo. 578. See subject Election of Remedies in 7 Ency. Pl. and Pr., 360 et seq.

*Hall & Hall* for defendant in error.

·(1) Nagley and the Financial Trust Company were the agents of the plaintiffs, and plaintiffs were bound by their acts and declarations within the scope of their authority. Robinson v. Walton, 58 Mo. 380, 384; Bergeman v. Railway, 104 Mo. 77, 86; Hampton v. Car Co., 42 Mo. App. 134, 141, 142; Meagher v. Railway, 14 Mo. App. 499; McLachlin v. Barker, 64 Mo. App. 511, 523, 524; Johnson v. Hurley, 115 Mo. 513, 520. (2) And Nagley as such agent had the right to employ the witness Orth as his sub-agent to take applications for loans and the acts and declarations of said Orth,

while engaged in said transaction, were competent evidence against the plaintiffs. Brown Adm'r. of Brown v. Railway, 45 Mo. 221, 224; Grady v. Ins. Co., 60 Mo. 116, 123; Lingenfelter v. Ins. Co., 19 Mo. App. 252, 265; Whitney Co. v. Burnham, 48 Mo. App. 340; Neiner v. Altemeyer, 68 Mo. App. 243, 245, 246. (3) There was no error committed at the trial and where it is clearly manifest that the judgment is for the right party, as it is in this case, the judgment will not be reversed even though error may have been committed at the trial. Bank v. Armstrong, 92 Mo. 265, 282; Fitzgerald v. Barker, 96 Mo. 661, 665; Vaughan v. Daniels, 98 Mo. 230, 232; Jones v. Poundstone, 102 Mo. 240, 245; Williams v. Mitchell, 112 Mo. 300, 315; State ex rel. v. Jones, 131 Mo. 194, 203; Stokes v. Burns, 132 Mo. 214, 222; Gentry v. Templeton, 47 Mo. App. 55; Deuchler v. Ins. Co., 51 Mo. App. 154; State v. Forrester, 63 Mo. App. 530, 533; R. S. 1899, sec. 865.

SMITH, P. J.—This is an action brought by the plaintiffs, T. E. Bowman & Co., a partnership, against the defendants Lickey, Conduit and Robinson, wherein the plaintiffs in their petition allege that the defendants and one Nagley entered into a conspiracy for the purpose of cheating and defrauding them—the plaintiffs—and that they—the defendants—were successful in carrying out their said conspiracy to the damage of plaintiffs, etc. The defendant Lickey filed a separate answer putting in issue the allegations of the plaintiffs' petition touching the conspiracy and alleging a counterclaim which was controverted by the plaintiffs' replication. There was a trial by the court without the intervention of a jury, which resulted in a finding adversely to the plaintiffs on the claim set up in their petition and favorable to the defendant on the counterclaim alleged in his answer.

Judgment was given accordingly and plaintiffs have appealed.

I.   The plaintiffs complain that the court erred in giving the defendant's first instruction in the nature of a demurrer to the evidence.    A brief reference to the salient facts which the evidence tends to prove and which are in the main undisputed, will, we think, be sufficient to show that such complaint is groundless.

Defendant was the owner of a fertile and productive tract of land containing one hundred acres on which he resided and which was divided by the boundary line between Grundy and Mercer counties.    The tract was subject to two deeds of trust incumbrances given to secure certain promissory notes which bore interest at the rate of ten per cent per annum.    One Orth, who had some agreement with said Nagley under which the latter was to divide with the former the commission which he received on loans, the applications for which were solicited by the former, knowing that the defendant's land was incumbered, induced him to make a written application to the plaintiffs for a loan on his land for $1,200 for five years, at six per cent interest per annum.    In this application it was expressly stated that the land was under mortgage for $1,200 and to whom and when due.    At the time the defendant gave the application to Orth it was agreed between them that the latter was to furnish at his own expense the abstract of the title to that part of the land lying in Mercer county and that an abstract of that part lying in Grundy county, which was in the hands of one Hughes and belonging to the former might be obtained and used by the latter.

It appears that the Hughes abstract could not be obtained and so Nagley, on his own motion, employed the defendant Conduit to prepare and furnish one in its place.    That of the Mercer county part was prepared by defendant Robinson at the request of Orth or Nagley.    The defendant Lickey did

not see either of these abstracts before they were forwarded
to the plaintiffs with his application.    Nor does it seem that
he had any conference or communication with either of the
abstractors in relation thereto, nor that he was informed of
what the abstracts showed.    The abstract of the Grundy
county part showed that the deed of trust had been released
by quitclaim deed of Wolz, the beneficiary, and the abstract
of that in Mercer county made no mention whatever of any
deed of trust therein, so that these abstracts showed an un-
incumbered title in the defendant.    The application and ab-
stracts were delivered by Nagley to plaintiffs.

Mr. Graham, an examiner to whom the defendant's ap-
plication was submitted, examined the land for the purpose
of ascertaining its value and desirability as a security for a
loan of $1,200 and made in writing a favorable report thereon
to plaintiffs.    On October 4, 1897, the defendant executed
his note to C. B. Merriam, one of the plaintiffs, for $1,200
and also a deed of trust on his land to secure the same.    Later
on, and on October 15, the Financial Trust Company, a part-
nership doing business at St. Joseph and sustaining to the
plaintiffs the relation of general financial agents in this state,
inclosed to said Nagley by letter a check payable to him and
defendant for the amount of the loan applied for, less the
commissions.    In the letter inclosing the check it was stated ·
by it that inasmuch as the defendant's application showed
that there was a mortgage on the land for $1,200, "before
this check is turned over we want you to see that this mort-
gage is released of record, if such mortgage exists, which
can not be unless the abstractor has made a mistake."

Some time shortly after this, Nagley came to the school
house, where defendant was teaching school, with the check
which he said was payable to both of them and that before he
could get the money on it to pay off the mortgages it would

be necessary for defendant to "sign it." The defendant insisted that Nagley should "sign it over to him," defendant, so that he could pay the mortgages, but this he declined to do, giving as a reason for his refusal that "the company" would not permit him to turn it over to the defendant and that he was required by it to pay off the mortgages himself. The defendant supposing this to be correct placed his name on the back of the check. Nagley immediately deposited it in the bank, taking credit for it on his individual account. It was paid by the bank on which it was drawn.

Still later on, Nagley called again at the defendant's school room and told him that he had an affidavit which he wanted him to make relative to his loan, and thereupon they went before Squire Campbell where the former produced the affidavit which he wanted the defendant to make but which the latter, upon reading, refused to do for the reason that it stated that his land was clear of incumbrance. Nagley then said that "the company" would draw on him for the money. Defendant said "let them draw," that he would not make the affidavit. Defendant then told Nagley that if he would erase and interline the form of the affidavit furnished so as to make it read that the error in relation to the loan was due to the abstracts or the records and not to his statement, he would sign it. This was done partly in ink and partly in pencil; and as so altered it was signed and sworn to. The defendant proposed to Nagley that each of them write an explanatory letter to the plaintiffs relative to the error, which was agreed to by him.

The next day the defendant wrote a letter to plaintiffs telling them that Nagley had recently come to him with the information that evidence of the indebtedness referred to in his application for the loan did not exist on record and had presented him a form of an affidavit from them (plaintiffs)

which stated that said indebtedness was an error.   Defendant further told plaintiffs in said letter that he had signed said affidavit modified so as to state that the error was either in the record or description of the land, but whether in the one or the other he did not know; but there was no error in the statement contained in his application.    It is then stated that when he purchased the land it was subject to a $1,700 mortgage which had been reduced to $1,200; that he had never seen the mortgages and did not know whether they were right or wrong, etc.    To this letter plaintiffs on November 20, 1897, replied that the abstract did not show the mortgages had been released of record—it showed the land was clear until their mortgage was placed on record.

Defendant testified that some time after this he met Wolz, the mortgagee, of whom he inquired whether he had received his money and on receiving a reply in the negative that he then became uneasy and telephoned to Nagley about the matter and received a reply from Mr. Canady, an uncle of Nagley, that he, Nagley, had gone to Ohio, but would return on the following Saturday or Monday; but as Nagley did not then arrive defendant inquired about the money and was informed by Canady that he supposed it was in the bank; that defendant then went to Trenton, the home of Nagley, and there found that there remained $338 of the money in the bank to Nagley's credit—the balance having been previously checked out by him—which on his return a day or two thereafter was turned over by him to defendant.    Nagley also conveyed to defendant his equity (which was of no value) in two lots, and Mrs. Nagley, the wife, assigned her interest in the estate of her deceased father in Ohio to defendant.    As soon as defendant ascertained that Nagley had embezzled the money called for by the check he telegraphed to the Financial Trust Company:  "Nagley gone.   Lickey loan misappropriated. Send agent at once."

The plaintiffs subsequently sold the defendant's said note given to Merriam to said Wolz for $900. Defendant applied the $338 turned over to him by Nagley in extinguishment of one of the prior incumbrances on his land. It appears that the value of the defendant's land was between $2,500 and $3,200. The defendant offered to turn over to the plaintiffs the securities which Nagley had assigned to him. He also demanded of the plaintiffs that they pay him the difference between the amount of the loan and the $338.

It is thus seen that the defendant "has been more sinned against than sinning." The evidence discloses no fact which would justify the inference that defendant was a party to any conspiracy to defraud the plaintiffs. It is to be inferred that he was a man who stood well among his neighbors for he was a teacher in the public schools and assessor of his township. His land was worth more than twice the money he endeavored to borrow, or more than the aggregate of the old mortgages and the new one held by plaintiffs. It clearly appears from all the evidence that he desired the loan for the purpose of paying off the existing mortgages on his land that he might get a lower rate of interest—and that he desired the money for no other purpose. It was not necessary for the defendant to resort to any fraud to procure a loan of the sum required to extinguish existing incumbrances on his land. Why should he enter into a fraudulent conspiracy with the other defendants and Nagley to get his hands on the plaintiffs' money? No reason for his doing so is disclosed by the evidence. His conduct from the inception of the negotiations to the unhappy termination was open, fair and honest; and we must think that the conclusion of the court as expressed in its rulings on the demurrer was eminently a proper one.

II.    And it follows from the foregoing considerations that the court was right in refusing the plaintiffs' sixth in-

struction which in substance declared that if defendant, after making his application for the loan, fraudulently misled plaintiffs into believing that the statement in his application that the land was incumbered was untrue, and into believing that it was unincumbered, and thereby induced plaintiffs to pay out money on account of defendant's note and deed of trust, etc., that there was liability for the damages claimed by plaintiff. There is no evidence contained in the record to authorize a consideration of the case by the court on any such theory. The affidavit made at Nagley's request could not have misled the plaintiffs or induced them to pay out money, for prior to that time the defendant's application had been passed upon and the check sent to Nagley by plaintiffs or their general agent.

Besides this, the affidavit appears from the uncontradicted evidence of defendant, the justice before whom it was made and other witnesses to have been so altered by Nagley as to express just the contrary to what was stated in the affidavit the defendant did make. It was a rank forgery and could not bind defendant in any way.

III. The court did not err in overruling the plaintiffs' objections to the introduction by defendant of any evidence in support of his counterclaim. The part of defendant's answer setting up such counterclaim states the facts constituting the foundation of it to be substantially the same as those which we have hereinbefore stated the evidence tends to prove. The answer further alleges that the plaintiffs' agent Nagley after receiving the check and collecting the money thereon, under the circumstances detailed by us in our previous statement of the facts, neglected to pay defendant the $1,200 for which he gave his said note and deed of trust, or, to pay off said prior deeds of trust, as he promised to do, but that plaintiffs had wrongfully accepted said note and deed of

trust and caused the same to be filed and recorded in the counties in which defendant's lands were situate; and that plaintiffs for the purpose of preventing defendant from successfully resisting any action brought to foreclose said deed of trust and for the purpose of preventing him from pleading a failure of consideration in their hands, wrongfully and fraudulently sold and transferred said note and deed of trust before due.

It is therein further alleged that the plaintiffs' said agent Nagley paid defendant $338 on said loan and that the balance of $862 is still due and unpaid thereon for which, with interest, judgment is demanded.

Section 604, Revised Statutes 1899, requires that the statement in the answer of any new matter constituting a counterclaim must be in ordinary and concise language without repetitions. And the next succeeding section (605) provides that the counterclaim mentioned in said section 604 must exist in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action and arising out of one of the following causes of action: First, the cause of action arising out of the contract or *transaction* set forth in the petition as the foundation of the plaintiffs' claim or *connected with the subject of the action.* In New York, the former rule that in an action for a tort a counterclaim, no matter whether arising on contract or based upon another tort could not be allowed, has been so far modified as to allow the interposition of a counterclaim in the full sense of the code whether arising on contract or based upon tort, whenever such counterclaim is founded upon a cause of action arising out of a *transaction* set forth in the complaint as the foundation of plaintiff's claim, or whenever it is *connected with the subject of the action.* Waterman on Set-Off, sec. 616, and cases cited. Fraud in the transaction

which is the subject of the suit may be subject to counterclaim. Woodruff v. Garner, 27 Ind. 4. Under the first subdivision of said section 605, a counterclaim may be interposed in the same form whether the plaintiff's action be for tort or upon a contract, for the facts being precisely the same in both phases of the action the counterclaim arises upon the express terms of the statute and is equally available. Herman v. McNamara, 77 Mo. App. loc. cit. 7. And it is immaterial whether it presents a legal or equitable cross-suit upon liquidated or unliquidated demands. Ritchie v. Hayward, 71 Mo. 560. In litigating either the claim of the plaintiffs or that of the defendant the alleged fraud must be investigated. The facts constituting the torts complained of by both parties are in many respects the same.

No reason can be seen why the defendant should go out of court and begin a separate and distinct action and thus have two trials when the whole matter may be determined in one. It seems to us that the very object of the statute is to enable parties by a single litigation to settle such counterclaims and thus avoid a multiplicity of suits. It is needless to say that the right of counterclaim is to be distinguished from that of set-off. The former is more comprehensive than the latter. This will be seen by reference to the statutes providing for the same. This statute is remedial and like all others of its kind should be liberally construed. We have no doubt that the intention of the legislature in adopting it was to authorize just what was done in this case.

IV. No error is perceived in the action of the court in refusing the plaintiffs' second and third instructions which were to the effect that if the defendant indorsed and delivered the check to Nagley for the purpose of having him cash it and then satisfy the deed of trust he, defendant, can not recover. Both the pleadings and the evidence conclusively

show that Nagley was the agent of the plaintiffs in respect to the check. They sent it to him with directions to see that the prior mortgage was released before he turned it over to the defendant. Under his instructions he could not rightfully deliver it to defendant as long as the said mortgage remained an incumbrance on the land. When he brought the check to the defendant for his indorsement the latter wanted him to let such latter have it to the end that he might collect it and discharge the incumbrance, but this was refused. He insisted on collecting it and discharging the mortgage himself which seems to have been prudent and in accordance with the usual and customary course in such cases.

The check was made payable to both Nagley and defendant, no doubt for the purpose of enabling the former to control the application of it. It was never unconditionally delivered to the defendant, for if it had been, the result would have been different. The check was that of the plaintiffs until it was unconditionally delivered to defendant. The plaintiffs could pay the loan to defendant by either delivering the check to him or by the application of the proceeds of it to the discharge of the prior mortgages. Their agent, instead of doing the one or the other, converted the same to his own private use. The defendant received of him only $338 of the amount due him on the loan for which he had given his note and deed of trust on the land and the balance has never been paid to him by either the plaintiffs or their agent. It will not do, in the face of the pleadings and evidence, to say that Nagley was not the agent of plaintiffs nor that he was not acting within the scope of his authority in withholding the delivery of the check until the mortgage was satisfied in some way. The money at the time of the conversion was that of the plaintiffs. This case is not like that of May v. Ins. Co., 72 Mo. App. 286, and the other cases cited

by plaintiffs. Here there was no order or authority of any kind emanating from the defendant to pay the proceeds of the loan over to Nagley. It is elementary law that if the Financial Trust Company and Nagley were the agents of the plaintiffs, as we think was the fact, then the latter were bound by the acts and declarations of the former within the scope of their agency.

V. If Nagley as such agent employed Orth as his sub-agent to take applications for loans, then the acts and declarations of the latter, while engaged in such transactions, would be competent evidence against the plaintiffs. Taking applications for loans was not performing any duty or exercising any power or authority involving skill, trust or discretion. The service performed by him for Nagley, the plaintiffs' agent, was merely ministerial.

The rule is that an agent can not delegate his authority to act for his principal without special authority to do so, or unless the act of the agent who delegates the authority is ratified by the principal with knowledge of the facts, but this rule does not apply to *ministerial* acts to be performed by the agent. It is not necessary that the agent do such acts in person if he direct the act to be done, or, with full knowledge of the act, he adopt it. Grady v. Ins. Co., 60 Mo. 116; Brown v. Ins. Co., 45 Mo. 221. No error is perceived in the action of the court in giving defendant's instructions. The theories which they declared, it seems to us, were subject to no serious objection.

VI. It appears that on receipt by the Financial Trust Company of the telegraphic dispatch from defendant, notifying it of the misappropriation of the check by Nagley, that it telegraphed to Mr. Graham, who had charge of the agents of the Financial Trust Company, etc., to go to Trenton as there was some trouble there about the defendant's loan. Mr.

Graham testified that he accordingly went to Trenton and there for the first time met the defendant and had a number of interviews with him respecting the trouble arising out of Nagley's misconduct; that Nagley at his (Graham's) suggestion, conveyed two pieces of real estate to defendant. He further testified that during one of his interviews with defendant and Mr. Hall, defendant's attorney, that Mr. Hall told him that if in the effort to adjust the loan matter, the defendant got anything out of Nagley and his wife to secure him that it would enure to the benefit of the Financial Trust Company, but that he would look to that company to make him whole. The securities assigned by Nagley and wife to the defendant were of no value whatever. The $338 paid by Nagley to defendant was applied to the extinguishment of the prior mortgages. The plaintiffs now insist that the transactions thus taking place between Nagley and defendant constituted an election by defendant of one of two inconsistent remedies and that having accepted the assignments from Nagley that he can not maintain his cross-action, or counterclaim, interposed in this suit.

It is now the well-settled law of this state that where a party has the right to pursue any of two inconsistent remedies that he makes his election and institutes his suit in case the action thus begun is prosecuted to final judgment, or the plaintiff has received anything of value under a claim thus asserted he can not thereafter pursue another inconsistent remedy. Commission Co. v. Railway, 126 Mo. loc. cit. 349, and cases there cited. The evidence furnishes no ground for even a pretense that the assignment made by Nagley and wife passed any property rights to the defendant that were of any value whatever. The check which Nagley converted to his own use belonged to the plaintiffs and not to the defendant. The relation of debtor and creditor did not exist between

Nagley and the defendant. Out of Nagley's conversion of the check no cause of action arose against him in favor of the defendant. The defendant's remedy for the failure of plaintiffs to pay over to him the amount of the loan for which he had given his note and deed of trust was against them and not against Nagley. He had no right to pursue any remedy against the latter on account of his conversion of the check.

Besides this, the plaintiffs suffered no detriment on account of the action of the defendant in taking the assignments. They were in no way induced thereby to change their position in respect to their claim against Nagley for the amount of the check converted by him. The defendant's conduct was not such as to estop him, as we think, from pursuing its remedy against the plaintiffs, the only party liable to him for the loan. The evidence nowhere discloses that the defendant ever asserted any claim against Nagley on account of his conversion of the check or that he ever accepted the assignment of any property rights, whether of value or not, in satisfaction of any claim against him. How then can it be contended that the rule just quoted from Commission Company v. Railway has any application in this case. The $338 was paid by Nagley to defendant as a part of the loan which his principals were bound to pay defendant. It was not paid because he, individually, was indebted to defendant but because his principal was. This is, therefore, not a case where the defendant was entitled to alternative remedies at all.

An examination of the record has convinced us that the judgment is for the right party and, therefore, errors, if any there be in the instructions, are of no importance. We can not think that any other judgment than that given by the court ought or could have been rightfully given in the case, and therefore it will be affirmed. All concur.