TAUSSIG, Respondent, v. THE SOUTHERN MILL
AND LAND COMPANY, Appellant.

St. Louis Court of Appeals, April 2, 1907.

1. **SALES: Delivery: Carrier as Agent.** Where a seller of chattels undertakes to make delivery at a distant point, the carrier is his agent and delivery to the carrier is not delivery to the buyer; so where a seller of lumber selected his own carrier and made the following terms of sale: "sixty days, or two per cent discount for cash, if remitted within ten days from date of the invoice," this meant that the two per cent discount should be allowed the purchaser if paid within ten days after the date of arrival of the lumber at destination.

2. ———: **Breach of Contract: Rescission.** Where the terms for the sale of a lot of lumber, to be delivered from time to time in carload lots, provided for two per cent discount from the invoice price if paid within ten days from date of delivery, and the purchaser made payment after the expiration of ten days on one car load of lumber, but deducted the two per cent, this was not such a breach of the contract of sale as would warrant the seller in refusing to continue the deliveries.

3. ———: **Breach of Contract: Damages for Breach.** Where a contract for the sale and delivery of lumber from time to time in carload lots was repudiated by the seller, the purchaser could treat the contract as at an end and bring his action at once for the breach and recover such damages as would arise from the non-performance of the contract. But in such case it was his duty to lessen the damages which would flow from a non-performance of the contract.

4. ———: ———: ———: **Evidence.** And in an action for such breach brought by the purchaser, evidence on the part of the defendant tending to show the price at which the plaintiff could have bought the same quality and kind of lumber during the time covered by the contract after the breach, was admissible.

5. **PRACTICE: Pleading: Modification of Written Contract.** In an action based upon a written contract, which was modified by a verbal agreement, in order to prove the modification, it was necessary to aver the same in the petition.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

REVERSED AND REMANDED.

124 App—14

*Chilton Atkinson* for appellant.

(1) A refusal to make paymant in accordance with the terms of the contract is a breach of the contract. St. Regis Co. v. Lumber Co., 85 N. Y. S. 1034; Town v. Jepson, 95 N. Y. 742; Palmer v. Breen, 24 N. W. 322, 34 Minn. 39; Sage v. Purcell, 90 Ill. App. 16; Purcell v. Sage, 200 Ill. App. 342; Forge Co. v. Corbin, 182 Mass. 590; Smith v. Keith, etc., Co., 36 Mo. App. 567. (2) When lumber is shipped to be delivered, and the contract specifies that the vendee shall pay the freight and deduct the same from the invoice price, the railroad company is the agent of the vendee, and the delivery is made when the lumber is placed upon the cars. The stipulation for delivery in such case only amounts to a guaranty of freight rates. Werner Co. v. Ferree, 201 Pa. St. 405; Gill v. Johnson Co., 84 Mo. App. 456. (3) The rule that the buyer may recover on breach of contract, the difference between the contract price and the market value of the goods is subject to the qualification that the buyer must use reasonable diligence to mitigate the damages. Coal Co. v. Coal Co., 47 S. E. 116; Ice Co. v. Tamm, 90 Mo. App. 189; Hazzard v. Hardison, 114 N. C. 482.

*J. Clarence Taussig* for respondent.

(1) The right to rescind a contract must be exercised promptly and upon the happening of the event which gives origin to that right and not afterwards; and if this be not done, when default occurs, as for instance where payment of the purchase money is not made at the time appointed, the right to rescind must be then exercised, or will be waived. Melton v. Smith, 65 Mo. 315; Lap v. Ryan, 23 Mo. App. 436; Robinson v. Siple, 129 Mo. 208; Cahn v. Reid, 18 Mo. App. 115; Johnson Co. v. Railroad, 52 Mo. App. 407; Taylor v. Short, 107 Mo. 384. (2) Respondent having paid all that was due appellant for car 523 appellant had no right to rescind

Taussig v. Mill & Land Co.

the contract. The discount period began from the delivery of the lumber in St. Louis; hence respondent had the right to take the discount at the time he did. The correct date for the bill head or invoice was the date of the delivery of the car to respondent; hence the discount period began from the date the car was delivered to respondent. Freight & Cotton Express v. Plant, 45 Mo. 517; Stresovich v. Kesting, 63 Mo. App. 57. (3) On the vendor's failure to deliver goods according to contract, the measure of damages is the difference between the contract price and the market price of the goods at the time when and the place where they should have been delivered. Northrup v. Cook, 39 Mo. 208; Warren v. Mayer Mfg. Co., 161 Mo. 124; Shouse v. Neiswanger, 18 Mo. App. 236; Griffith v. Construction Co., 46 Mo. App. 539; (4) If, in an action for damages for failure to deliver goods sold, the goods have a market price at the place of delivery, that price must control in measuring the damages, and resort can only be had to the price at other places where there is none at the place of delivery. Bush v. Fisher, 85 Mo. App. 1; Cobb v. Whitsett, 5 Mo. App. 146; Rice v. Manley, 5 Thomp. & C. (N Y.) 14; Grand Tower Co. v. Phillips, 90 U. S. 47; Ex Parte Becker, Fed. Case No. 1207.

STATEMENT.—On January 16, 1903, the plaintiff and defendant (a corporation) entered into the following contract:

"SOUTHERN MILL AND LAND COMPANY,
St. Louis, Mo., Jan. 16, 1903.

"Mr. L. J. Taussig,
City.

"Dear Sir: We have this day corrected your orders to read as follows and accept same as stated below.

"About 95,000 ft." Common and Better Sap Gum Bandsawn at $13.50 per M ft. This being the balance on your order No. 641.

"About 175,000 ft. 1" Common & Better Sap Gum at $13.00 per M ft.

"4 Cars 1" Cull Gum at $11.00 per M ft. N. Market St.

"These prices are f. o. b. cars St. Louis, Mo., and subject to terms as printed on our bill heads.

"No specific time of delivery is agreed to, but we will continue to ship in fair proportion to our other orders taken on or before Nov. 5, according to the supply of cars we are able to obtain. It is understood that if either your measurement or inspection is unfair we reserve the right to discontinue shipments at any time.

"This agreement is in compromise and settlement of all disputed points between us and cancel all orders either oral or written given previous to this date.

"SOUTHERN MILL AND LAND COMPANY,

"I accept this agreement, "Per A. B. PIERCE, Treas."

"L. J. TAUSSIG."

The terms printed on defendant's billheads, referred to in the contract and thereby incorporated in it, read as follows:

"Terms: 60 days or 2 per cent discount for cash after deducting freight, if remitted within ten days from the date of the invoice."

The petition alleged a failure on the part of the defendant to deliver one hundred and three thousand feet of the common and better sap gum lumber and a failure to deliver any of the cull gum lumber mentioned in the contract.

The answer admits that after delivering certain portions of the common and better sap gum lumber, defendant cancelled the contract and refused to make further deliveries, for the reason the plaintiff withheld a portion of the payments due on the lumber delivered, in violation of the terms of the contract, and that plaintiff made unfair measurements and inspections of the lumber shipped him.

The reply denied that plaintiff breached the contract, and further alleged, that if there were any breaches of the contract, by plaintiff, as alleged in the answer, they had been waived by the defendant.

The evidence for plaintiff shows that defendant failed to ship one hundred and three thousand feet of the common and sap gum lumber, and failed to deliver any of the cull lumber. The last carload of lumber (car No. 523) arrived in St. Louis on May twenty-fifth, and on the seventeenth of the following June, defendant cancelled the contract. Plaintiff testified that on June fifth, he had a conversation with A. B. Pierce, treasurer of the defendant company, at his office in the city of St. Louis, about future deliveries, and Mr. Pierce agreed that thereafter the company would ship one carload of the common and better sap gum lumber each week, and one carload of the cull lumber every two weeks; that if this agreement had been kept, all the lumber would have arrived before the end of August. Plaintiff offered evidence tending to show that the market value of common and better sap gum lumber, in the city of St. Louis, during the months of June, July and August, 1903, was seventeen dollars and fifty cents per thousand feet.

Defendant's evidence is that plaintiff made his remittance to pay for lumber by checks sent through the mail; that prior to June fifth, plaintiff deducted two per cent from the net amount of several carloads of lumber, although the remittances were not made for more than ten days after the date of the invoices, and defendant objected and protested against this discount on its bills. Plaintiff, however, claims that the invoices should have been dated on the day the lumber arrived in St. Louis.

On March 24, 1903, defendant addressed the following letter to plaintiff:

"Mr. L. J. Taussig,

Commercial Bldg., City.

"Dear Sir: We beg to acknowledge the receipt of

your check No. 1214 for $394.06, on account of cars Nos. 8884,✱9039 and 2207.

"We notice that you in each instance, as well as in the case of car No. 8010, have violated the explicit terms of our agreement in regard to the discount. We have called your attention to this point before, and we can only construe your action on this matter in one way, and that is an intentional disregard of the agreement under which this lumber was shipped.

"Yours truly,
"SOUTHERN MILL AND LAND CO.,
"Per A. B. PIERCE, Treas."

On April twenty-seventh the defendant shipped plaintiff a carload of lumber (car No. 523) from Conran to Catron, Missouri, where its mills are situated, and made out an invoice of the shipment, dated the same day. The plaintiff received the shipment and indorsed the following statement on the invoice:

"Less freight $81.90, less 2 per cent $4.96, check to balance, 6-5-03, $242.74. Car arrived May 25, '03."

So that the invoice with the notations thereon appeared as follows:

"SOUTHERN MILL AND LAND COMPANY,
HARDWOODS AND YELLOW PINE.
Mills at Conran, Mo., Catron, Mo.
General Offices:    Security Building.
St. Louis, Mo., April 27th, 1903.

Sold to L. J. Taussig,
St. Louis, Mo.

F. O. B. St. Louis.

| Thickness Inches. | Feet | Description | Price | Amount |
|---|---|---|---|---|
| 1 | 25354 | Com. & Better Sap Gum | 13.00 | 329.60 |
| | | Less Frt, .... .... ...... .. | | 81.90 |
| | | | | 247.70 |
| | | Less 2 per cent ...... ...... | | 4.96 |
| | | Check to balance, 6-5-03...... | | 242.74" |

And on June fifth or sixth, plaintiff mailed defendant a check for two hundred and forty-two dollars and seventy-four cents in payment for the carload of lumber. Defendant returned the check for the reason it was short $4.96. Plaintiff remailed the check to the defendant and inclosed it in the following letter:

"Saint Louis, June 11th, 1903.
"Southern Mill & Land Co.,
City.

"Gentlemen:—Car 523 I. & V. R. R. arrived May 25th. Lumber was sold f. o. b. cars St. Louis, therefore the discount period dates from time of delivery of the lumber in St. Louis. I have legal advice on this point and am informed that I am clearly within my rights in taking off two per cent discount. It is also the custom of the trade to count discount periods from date of arrival.

"I herein inclose the check returned.

"Yours very truly,
"L. J. TAUSSIG."

In answer to this letter defendant wrote as follows:

St. Louis Mo., June 17th, 1903.
"Mr. L. J. Taussig,
Commercial Building,
City.

"Dear Sir: We have collected your check of the fifth inst., being No. 1268 on the National Bank in St. Louis, which is short $4.96. We have duly notified you of this fact and notwithstanding our protests you refuse to pay the balance due.

"The amount is too small to worry over and we are simply collecting what you have sent, reserving only the consolation that we have no further dealings with you, our contract being at an end.

"Yours truly,
"SOUTHERN MILL AND LAND CO.,
"Per A. B. PIERCE, Treas."

Pierce testified that he did not, on June fifth, or at any other time, say to the plaintiff that the defendant company would thereafter ship one carload per week of the common and better gum lumber and one carload of the cull lumber every two weeks; that nothing was said in the conversation as to when the lumber should or would be shipped.

The court to whom the issues were submitted found for plaintiff and assessed his damage at the sum of $697.53. A timely motion for a new trial was filed by the defendant, which the court overruled and rendered judgment for the plaintiff, from which judgment defendant appealed.

BLAND, P. J., (after stating the facts).—1. The circuit court construed the clause of the contract, "Terms: sixty days or two per cent discount for cash after deducting freight, if remitted within ten days from the date of the invoice," to mean that plaintiff was entitled to two per cent discount, if he made remittances within ten days from the date a car of lumber arrived in St. Louis; in other words, that the invoice date mentioned in this clause of the contract, meant that the invoice should be dated on the day the shipment was delivered at St. Louis, and not on the day the lumber was loaded on the car at defendant's mills at Conran, Missouri, and receipted for by the carrier. The contention of defendant is that the place of delivery of the lumber was aboard cars at its mills. This would be so if the plaintiff had selected the carrier to haul the lumber [Gill & Fisher v. Commission Co., 84 Mo. App. 1. c. 460; Werner Sawmill Co. v. Ferree, 201 Pa. St. 405.] But where the seller himself undertakes to make delivery at a distant place and selects his own carrier, the carrier is not the buyer's agent but the agent of the seller, and delivery of the goods to the carrier is not delivery to the buyer. [Benjamin on Sales, sec. 1040; Braddock Glass Co. v. Irwin & Co., 153 Pa. St. 440; Atchison v. Railroad,

80 Mo. 213; Hance v. Railroad, 62 Mo. App. 60; Bergner v. Railroad, 13 Mo. App. 499.] The stipulation in the contract, that plaintiff should pay the freight and deduct it from the price of the lumber, was for the accommodation of the defendant and did not in the least alter the relation of the carrier to it, therefore, the plaintiff, under the terms of the contract, did not become liable for a shipment of lumber until delivery or tender of delivery at St. Louis; and a fair and just interpretation of the contract gave him sixty days thereafter to make payment, and the two per cent discount, if he made payment within ten days from the date of delivery. Otherwise, if the car of lumber, from any cause, should not be delivered within sixty days from the date it was loaded at defendant's mill, the price of that carload would become due before the lumber was delivered, or if a car should be delayed over ten days from the date of shipment (as was the case with car No. 523) plaintiff would be deprived of his right to the two per cent discount should he remit payment within ten days from the date of its arrival. Such results could not have been in the minds of either of the parties to the contract when it was entered into. We think the learned circuit judge correctly ruled that the date when payment should become due, under the contract, was sixty days from the date of the arrival of a shipment at St. Louis, and that plaintiff was entitled to the two per cent discount if he made remittance within ten days after the date of arrival. Now, in respect to car No. 523, the invoice shows it was loaded on April twenty-seventh. The evidence shows that it did not arrive in St. Louis until May twenty-fifth, and that plaintiff's check to pay for the car was dated June fifth and mailed on that or the next day. The remittance, therefore, was not made within ten days from the date of the arrival of the lumber in St. Louis, or from the date of the invoice, according to the day the trial court found it should have been dated;

yet, the plaintiff deducted the two per cent discount from the selling price of the lumber and, on demand of the defendant, refused to pay what he had thus wrongfully withheld. This was a breach of the contract. But was it such a breach as authorized the defendant to cancel the contract? If so, then the plaintiff cannot recover unless the defendant waived the breach by its subsequent conduct. It is well-settled law that if the purchaser fails to pay for property delivered as required by the contract, the seller may abandon the contract and recover the property (Evans v. Railroad, 26 Ill. 189) or, if the property is to be delivered in installments and paid for as delivered, and the purchaser fails to make payments as the contract provides, the seller may cancel the contract, refuse to make future deliveries and recover for the property actually delivered. [Bradley v. King, 44 Ill. 339; Purcell Co. v. Sage, 200 Ill. 342; Eastern Forge Co. v. Corbin, 182 Mass. 590; National Machine, etc., Co. v. Standard, etc., Co., 181 Mass. 275.] But in all these cases the purchaser did not refuse to pay a part of the purchase price, or a part of the installments due under the terms of the contract, but the whole of it. Plaintiff did not refuse to pay for the carload of lumber delivered May twenty-fifth. He only claimed the right to deduct two per cent from the purchase price as discount. He was not entitled to this discount. But the amount was so small, and the breach of the contract so insignificant, and defendant could so easily have been compensated in damages for the breach, that we do not think the deduction of the two per cent discount from the price of the carload of lumber was such a refusal of the plaintiff to perform the contract as would authorize the defendant to cancel it. [7 Am. & Eng. Ency. of Law, p. 150.]

2. The defendant offered to prove that all the gum lumber shipped to the St. Louis market came from the southeastern portion of the State, and to show that in

the months of June, July and August, 1903, gum lumber of the kind and quality defendant contracted to sell plaintiff, could have been bought in southeast Missouri and hauled by railroad to St. Louis, at a cost per thousand feet less than the price plaintiff contracted to pay defendant. The court, on the objection of the plaintiff, excluded this evidence. Plaintiff was a dealer in lumber, and the lumber he contracted to take from defendant was for the purpose of selling on the market of St. Louis, or to fill contracts plaintiff had with other parties, and defendant contends that as the lumber was merchandise, it was incumbent on plaintiff to provide himself as cheaply as he could, conveniently, with the lumber defendant refused to deliver under the contract, from the most accessible sources and thus lighten the loss or prevent it altogether, and that his right of recovery is not the difference, if any, between the market value of the lumber at St. Louis and the contract price, but the difference between the contract price and the price at which plaintiff could have supplied himself with the same merchandise, by reasonable effort. The circuit court ruled that the measure of plaintiff's damage was the difference between the contract price and the market value of the same kind and quality of lumber during the months in which it should have been delivered, to-wit, June, July and August.

Defendant repudiated the contract on June 17, 1903. Plaintiff commenced his action on the thirtieth day of the same month. He thereby elected to put an end to the contract and to treat its repudiation by defendant as wrongful. The law with reference to a contract to be performed at a future time, where the party bound to performance announces prior to the time, his intention not to perform it, is stated as follows by Lord COCKBURN, Chief Justice, in Frost v. Knight, L. R. 7 Ex., at pages 112-113. "The promisee, if he pleases, may treat the notice of intention as inoperative, and

await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of non-performance; but in that case he keeps the contract alive for the benefit of the other party as well as his own; he remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstance which would justify him in declining to complete it.

"On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it; and in such action he will be entitled to such damages as would have arisen from the non-performance of the contract at the appointed time, subject, however, to abatement in respect of any cicumstances which may have afforded him the means of mitigating his loss."

By acting on the notice of repudiation, it was the duty of plaintiff, if he had the means, to avert or lessen the damages which would otherwise flow from the non-performance of the contract (Creve Coeur Lake Ice Co. v. Tamm, 90 Mo. App. l. c. 197, and cases cited) and we think the evidence offered by defendant for the purpose of averting or lessening the damages should have been admitted.

3.   Plaintiff's evidence to the effect that defendant, through Pierce, its president, agreed on June 5, 1903, to thereafter make weekly deliveries of the lumber, tended to prove a modification of the written contract, in respect to the time of delivery of the lumber.   It is competent for parties to a written contract to verbally modify it, but it is not competent to prove such modification without pleading it.   [Lanitz v. King, 93 Mo. 513, 6 S. W. 263; Halpin Mfg. Co. v. School District, 54 Mo. App. 371; Wilson & Son v. Russler & Gnagi, 91 Mo. App.

MARCH TERM, 1907.                221

Martin v. Merc. Town Mut. Fire Ins. Co.

l. c. 280.] And the learned trial judge, in estimating the damages, based his estimate on the modification of the contract, as testified to by plaintiff, and thereby permitted a recovery on a cause of action not stated in the petition.

4. It is contended by plaintiff that defendant, by accepting plaintiff's check for $242.74 in payment for the carload of lumber shipped April twenty-seventh, waived the discount of two per cent on the purchase price of said lumber. The evidence does not tend to show a waiver. Defendant's letter of June 17, 1903, shows plainly it elected to pocket the loss of the $4.96 and at the same time repudiate the contract.

For the errors herein noted, the judgment is reversed and the cause remanded. All concur.