## HOWARD, Appellant, v. HAAS, Respondent.

St. Louis Court of Appeals, April 28, 1908.

1. **SALES: Cash on Delivery.** Where the terms of a sale of merchandise are cash on delivery, the title does not pass until payment, although the purchaser gets possession of the goods purchased.

2. **PRACTICE: Replevin: Counterclaim.** A canning company made a contract with a dealer agreeing to sell and deliver to the latter a given quantity of tomatoes, cash on delivery, and shipped a part of the quantity required by the contract, of which the purchaser got possession, without paying the draft accompanying the bill of lading. The seller brought an action of replevin for the tomatoes, claiming them on the ground that the cash was not paid. *Held*, the purchaser could maintain in the same action a counterclaim for failure of the seller to comply with the contract in not delivering the quantity provided for, since his counterclaim arose out of the subject-matter of the action, as contemplated by section 605, Revised Statutes 1899.

3. ———: ———: ———: **Measure of Damages.** The measure of defendant's damages in such case on the counterclaim was the difference between the contract price of the tomatoes which the plaintiff was under obligation to deliver and the value of the same at the date of the breach of the contract, which amount he could recover, less the damage sustained by plaintiff for the wrongful detention of the goods replevined.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston*, Judge.

REVERSED AND REMANDED.

*F. T. Stockard* and *O. L. Cravens* for appellants.

(1) The shipment of the tomatoes, according to the terms of sale, by bill of lading attached to the sight draft, payable on presentation, had the effect to retain in plaintiff the title to the tomatoes till the draft had been honored by defendant. And it can not make any difference that defendant got possession of

the tomatoes. Such possession was wrongful as against plaintiff and he can recover them. Warehouse Co. v. Railroad, 102 S. W. 11; Dickson v. Elevator Co., 44 Mo. App. 498; Skilling v. Bollman, 73 Mo. 665; Commission Co. v. Railroad, 87 Mo. App. 330; Smelting Co. v. Markle L. Works, 102 Mo. App. 158; 6 Cyc. 426; Frazier v. Railroad, 104 Mo. App. 355.    (2)    It is a well-settled law of this State, that when a sale is made for cash on delivery, the transaction is not complete until the purchase price is paid and until then the purchaser gets no title, and the vendor may reclaim his property if the purchase money be not paid according to the terms of the sale.    Johnson-Brinkman Co. v. Bank, 72 Mo. App. 437; Southwestern Freight & Cotton Press Co. v. Standard, 44 Mo. 71; Johnson-Brinkman Co. v. Bank, 116 Mo. 558; Hall v. Railroad, 50 Mo. App. 179; Johnston v. Parrott and Barnes, 92 Mo. App. 199.    (3)    Under the terms of the contract the tomatoes were to be paid for on delivery, that is, they were not to be delivered till they were paid for.    This intention is shown by the provision in the contract for the drawing of a sight draft attached to the bill of lading.    In such circumstances plaintiff, on defendant's refusal to pay for the shipment of tomatoes, had the right to rescind the contract and replevin them, and for this reason the peremptory instruction should have been given for plaintiff.    Commission Co. v. Railroad, 126 Mo. 344; Commission Co. v. Railroad, 72 Mo. App. 437; Commission Co. v. Railroad, 52 Mo. App. 407; Johnston v. Parrott, 92 Mo. App. 199.    This phase of the case was squarely put to the court by plaintiff's third refusal instruction.

*John T. Sturgis* for respondent.

This case was tried on the counterclaim.    It is definitely settled that in a replevin suit a counterclaim growing out of the same transaction may be filed and all controversies settled in one suit, even to the extent

of granting affirmative relief and rendering a money judgment in favor of defendant.      Harvesting Co. v. Hill, 104 Mo. App. 545.      The action of replevin is statutory and flexible and may be adjusted to meet the facts of each particular case.      Burt v. Mears, 41 Mo. App. 231; Daugherty v. Cooper, 77 Mo. 528; Freeman v. Lavenue, 99 Mo. App. 173; Bautell v. Warne, 62 Mo. 350; Bank v. Snyder, 85 Mo. App. 82; Harvey v. Stephens, 159 Mo. 486; Barnes v. Rawlings, 74 Mo. App. 531.

STATEMENT.—On June 22, 1905, the following contract was entered into by plaintiff and defendant:

"Republic, Mo., June 22, 1905.

"The Central Point Canning Company, of Springfield, Mo., hereby sell, and Ed. Haas, of Neosho, Mo., hereby buys, 500 cases 3s Standard Tomatoes, pack of 1905, at 70c per dozen, net cash, f. o. b. Springfield, Mo.    Usual    guarantee    against    all    swells    and    leaks until June 1, 1906.

"Seller not liable for delivery of goods in case of destruction of cannery, and not liable for delivery of more than 75 per cent of this order in case of inability to fill orders in full, owing to partial or complete destruction of crops by hail, drought, or any unavoidable accident or casualty.

"Shipment to be made as soon as goods are ready.

"Terms:    Sight draft against bill of lading payable on presentation.

"This contract is written in triplicate.

"ED. HAAS, Buyer.                (Seal.)

"Accepted CENTRAL POINT CANNING CO. (Seal.)

"MARTIN L. HOWARD, Manager."

Plaintiff Howard, at the time the contract was made, was the sole lessee of the canning company's factory and the contract was for his sole benefit.    About October 1, 1905, plaintiff shipped defendant, at Neosho, Mo., 218 cases of tomatoes, by local freight, and drew

a sight draft for the contract price on defendant, attached it to the bill of lading, and sent it through a bank to Neosho for collection. Defendant got possession of the tomatoes, but refused to pay the draft. Plaintiff drew a second draft a few days afterwards and also called upon defendant and demanded payment· for the tomatoes. Defendant refused to honor the second draft, or to pay for the tomatoes, and plaintiff brought this action in replevin, got possession of the tomatoes and in about sixty days thereafter sold them for $1.10 per dozen.

The answer, after admitting defendant was in possession of the tomatoes at the time suit was brought, set up the following counterclaim:

"Defendant avers that he was and is the owner and rightly entitled to the possession of said property and now claims the same and demands a return thereof to him. Defendant says that said property was and is of the value of $436 and that he has been damaged by plaintiff's taking and detention of the same in the sum of $100 for which he asks judgment.

"Defendant for further answer and counterclaim herein says that by contract duly made between plaintiff and defendant on June 22, 1905, plaintiff, doing business under and using the name of Central Point Canning Company, sold to defendant for future delivery five hundred cases 3s. Standard tomatoes, pack of 1905, at seventy cents per dozen net cash, f. o. b. Springfield, Mo., shipment to be made as soon as goods were ready which was in the fall of 1905, and plaintiff contracted and agreed to ship and deliver to defendant said amount of tomatoes at the price above stated. A copy of said contract is attached to and filed with the papers in this case and is made a part thereof. Defendant further says that plaintiff, in October, 1905, did ship and deliver to him the canned tomatoes sued for in this case, being 218 cases only, but failed and refused

to ship or deliver to him the balance of said five hundred cases of tomatoes or any part thereof, but on the contrary stated to defendant and notified him that he would not ship or deliver to defendant any other or more tomatoes and claimed that he was not obligated so to do. Defendant further says that the market price and value of canned tomatoes of the kind and quality which plaintiff had sold and contracted to deliver to defendant was in October, 1905, and during the entire fall and winter of said year one dollar per dozen cans or two dollars per case, whereas plaintiff had sold and agreed to deliver same to defendant at seventy cents per dozen or $1.40 per case.

"Defendant further says that had plaintiff shipped and delivered to defendant the entire five hundred cases of tomatoes, or even 375 cases, the same would and could have been shipped in carload lots and at carload rates.

"Wherefore defendant says he is damaged by reason of plaintiff's breach of his contract to sell and ship to him said 500 cases of tomatoes in the sum of $306.10 for which he asks judgment."

The reply (omitting caption) is as follows:

"Comes now the plaintiff herein and for his replication to the defendant's answer herein setting up new matter denies each and every allegation thereof.

"And for further reply states that that part of the contract set up in defendant's answer relative to amount of tomatoes sold by plaintiff to defendant was waived by the defendant and that this plaintiff shipped said tomatoes and drew sight draft payable on presentation by defendant which was not honored by defendant and payment of said tomatoes was refused."

The issues were tried to the court sitting as a jury, who after hearing the evidence rendered judgment for defendant on the counterclaim for $412.50, from which plaintiff appealed in the usual way.

It is conceded by defendant that plaintiff was not obliged, under the terms of the contract, to deliver more than seventy-five per cent of the five hundred cases agreed to be delivered.    Plaintiff's evidence shows that he made similar contracts with other persons whereby he agreed to deliver two thousand cases; that on account of an unfavorable season he was unable to procure enough tomatoes to fill seventy-five per cent of his contracts and so informed defendant, and on September twenty-fifth wrote him the following letter:

Republic, Mo., Sept. 25, 1905.

"Ed. Haas,

"Neosho, Mo.,

"Dear Sir:    Your letter of the eighteenth inst. addressed to the Central Point Canning Company, Springfield, Mo., has just been received by me.    You ask me how many cases of tomatoes I will be able to ship on your two contracts for 1000 cases, purchased through A. C. Maher Brokerage Co., Joplin, Mo.    You are evidently mistaken about having bought 1000 cases as I only sold you 500 and I wrote you some days ago that I would not be able to deliver over 375 cases, if that.    I find now that I cannot deliver you over about 200 cases and kindly ask for an immediate reply as to whether or not you want them shipped local or otherwise.    I am very sorry indeed that the season has been such that I am forced to cut your contract down to this small amount and trust, however, that it will not discommode you very much.    While I fully realize that I would not be compelled to ship any one the contract, I do not desire to take any advantage and am willing to ship, you what I can and I trust my action in this matter will be satisfactory to you.    Awaiting any further reply you may desire to make, I am,

"Yours truly,

MARTIN L. HOWARD."

Defendant replied to this letter as follows:

"Neosho, Mo., 9—27, '05.

"Martin L. Howard,

"Republic, Mo.

"Dear Sir: Replying to yours of September twenty-fifth, will say, please ship me all the tomatoes you possibly can apply on my contract. I am sorry that you cannot fill my contracts in full. Do the very best you possibly can, as I need the goods.

"Yours truly,

"ED. HAAS."

Plaintiff apportioned the tomatoes he had been able to can equitably among the parties with whom he had contracted to make deliveries. In the allotment 218 cases fell to defendant. Plaintiff claims that defendant's letter of September twenty-seventh waived the performance of the contract in respect to the number of cases to be delivered. At the time of the trial defendant's evidence tended to show that "3s Standard tomatoes" were worth $1.25 per dozen. Plaintiff's evidence shows they were worth eighty-five cents per dozen at the time the writ of replevin was served. The tomatoes were shipped by local freight, and defendant's evidence tends to show that the freight charges would have been $6.10 less, had they been shipped as a carload lot. Defendant relies upon the following letter as an instruction to plaintiff to ship by the carload, to-wit:

Neosho, Mo., 9—7, '05.

"Martin L. Howard,

Springfield, Mo.

"Gentlemen: Replying to yours of September 4th, will say three hundred and seventy-five cases of tomatoes will not make a car, as the minimum weight is thirty thousand pounds. Please ship me four hundred and fifty cases instead of three hundred and seventy-five

which will be satisfactory.    Let the goods come forward any time after September 20th.

"Yours truly,

"ED. HAAS."

The judgment recites that "defendant in open court waives the right to the return of the property (being 218 cases of Standard tomatoes) and elects to take the value of the same, which the court finds to be $545, from which is to be deducted the purchase price of the same which is $305.20 less the amount found for defendant on the counterclaim set forth in the answer.    The court finds for defendant in said counterclaim in the sum of $172.20.    It is further considered and adjudged by the court that defendant have and recover from the plaintiff and his sureties on the replevin bond, W. L. O'Bryant and F. T. Stockard, the sum of $412.50, together with his costs herein expended and that execution issue therefor."

BLAND, P. J. (after stating the facts).—1.    Plaintiff makes the point that as the terms of the sale were for cash on delivery, and as defendant got possession of the tomatoes without complying with the terms of the contract, the title did not pass, and hence defendant's possession was wrongful and plaintiff was entitled to recover, regardless of the counterclaim.    It is the settled law in this State that when a sale of personal property is made for cash on delivery, the transaction is not complete and the title remains in the seller until the purchase price is paid, though possession is delivered to the buyer, unless payment is waived. [Southwestern Freight and Cotton Press Co. v. Stanard, 44 Mo. 71; Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558, 22 S. W. 813; Commission Co. v. Railroad, 72 Mo. App. 437; Johnston v. Parrott & Barnes, 92 Mo. App. 199.]    Payment of the purchase price of the tomatoes was not waived by plaintiff.    The property was

Howard v. Haas.

his and he was clearly entitled to its possession and to damages for the unlawful detention of the tomatoes.

2. The action was in tort and the question arises whether or not defendant was entitled to plead his counterclaim. The counterclaim arose out of the transaction set forth in the complaint and was connected with the subject-matter of the suit, and is allowable by the express provision of section 605, of the Code of Civil Procedure, and as defendant could have a several judgment for the subject pleaded in the complaint, we think the counterclaim was clearly allowable. [Miller v. Crigler, 83 Mo. App. 395; Bowman & Co. v. Lickey, 86 Mo. App. 47; Workman v. Warder, 28 Mo. App. 1; McCormick Harvesting Co. v. Hill, 104 Mo. App. 1. c. 556-7, 79 S. W. 745; Babb v. Talcott, 47 Mo. 343.]

3. What is the measure of defendant's damages on his counterclaim? Certainly not anything for taking that from him to which he had no title, or right of possession, namely, the 218 cases of tomatoes. By replevying the 218 cases of tomatoes and refusing to deliver the number of cases he had obligated himself to deliver, there being no waiver of delivery, plaintiff breached his contract, and the measure of defendant's damages on his counterclaim is the difference in the contract price of the tomatoes which plaintiff was obligated to deliver and their value at the date of the breach of the contract, less any damages plaintiff may have sustained by reason of the wrongful detention of the 218 cases by defendant. These views call for a reversal of the judgment and a remanding of the cause for new trial. It is so ordered. All concur.