GUSTAVUS C. STREET and LEROY R. STREET, Co-partners, Doing Business as STREET AND COMPANY, Respondents, v. WERTHAN BAG AND BURLAP COMPANY, a Corporation, doing Business as ST. LOUIS BAG AND BURLAP COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed February 5, 1918.

1. **SALES, Place of Delivery: F. O. B., and Freight Paid Synonymous.** As fixing the place of delivery, the terms, freight paid and f. o. b., are synonymous.

2. ———: ———: **Carrier as Agent.** Where a contract of sale of goods was silent as to the railroad over which goods were to be shipped freight prepaid, that the seller complied with a request of the buyer in sending one carload over a certain road, had no bearing on how or where the delivery of the unshipped portion of the order was to be made, because the buyer had no authority to compel the seller to ship by any particular route.

3. ———: ———: **Market Value: Shipment of Goods.** Where an order of good was to be shipped "freight paid to Houston, allowing you 3 per cent discount for cash against document," the point of delivery was Houston, and hence the market value at Houston was the basis of damages for failure to ship.

4. ———: ———: ———: **Failure to Deliver: Damages: Sufficiency of Evidence.** Evidence *held* sufficient to support a finding that a purchaser of undelivered goods who bought in the open market on September 4th, where the last day for fulfillment of the contract was August 31st, had complied with the established rule with reference to such purchases, and had bought at the market value.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*Stern & Haberman* and *H. A. Loevy* for appellant.

(1) The court erred in refusing Instruction No. 1 (demurrer to the evidence): (a) Because respondent's damages (if any) should have been based on market value at St. Louis, not Houston (as to which there was not a particle of evidence), because delivery was to take place at St. Louis, not Houston. Gill v. Com. Co., 84 Mo. App. 456; Rosenberger case, 212 Mo. 654; Niemeyer v. Burlington, 54 Neb. 321, 40 L. R. A. 534; 35 Cyc. 172; Comstock v. Affelter, 50 Mo. 412; Scharff v. Meyer, 133 Mo. 428; Bank v. Smith, 107 Mo. App. 178; Taussig v. Mill Co., 124 Mo. App. 209; West. Glass Co. v. Mo. Glass Co., 169 Mo. App. 368; Austin v. Peycke, 178 Mo. App. 225; Corby v. Thompson, 186 Mo. App. 95; State v. Scott, 189 S. W. 1191; State v. Loeb, 190 S. W. 299; State ex

rel. v. Dick, 270 Mo. 100; Mark v. Cooperage Co., 204
Mo. 268; Price v. Vanstone, 40 Mo. App. 211; Schwab
v. Frieze, 107 Mo. App. 556; Tuttle v. Con. Co., 136
Mo. App. 315; Coal Co. v. Packing Co., 138 Mo. App.
280; Woldert v. Pillman, 191 Mo. App. 25; Northrup
v. Cook, 39 Mo. 208-9, 212; Koeltz v. Bleckman, 46 Mo.
321; Rickey v. Tenbroeck, 63 Mo. 567; Bloom v. Haas,
130 Mo. App. 124; Kerwin v. Doran, 29 Mo. App. 403,
404, 410. Time and place of delivery are of the essence
of mercantile contracts (citing 115 U. S. 188). Redlands
v. Gorman, 161 Mo. 212. (b) Because respondents
themselves (not appellant) selected the carrier to receive
the goods from appellant at St. Louis, which absolutely
and beyond question made the carrier so selected their
agent at St. Louis and the goods would immediately
become their property. Abs. 75, Defts. Ex. 2.. Gill v.
Com. Co., 84 Mo. App. 460. When no special instruc-
tions are given by vendee, delivery to any carrier
usually employed is delivery to the vendee. Louis v.
Imhof, 138 Mo. App. 370 and 375. A refusal by vendee
in such case to receive shipment is a refusal to receive
its own property. Coal Co. v. Packing Co., 138 Mo. App.
282. (d) Even though the record shows that appellant
attached sight draft to bill of lading for the only car-
load, shipped and sent them to a bank at Houston with
instructions not to deliver bill of lading until the draft
was paid, that did not change place of delivery nor rule
of law that delivery to carrier is delivery to vendee.
Nor could it change contract of purchase. Rosenberger
case, 212 Mo. 648, 654, overruling Wingfield case, 115
Mo. 436; Gill v. Com. Co., 84 Mo. App. 460; Storage
Co. v. Com. Co., 178 Mo. App. 227; Dick case, 192 S. W.
1023. Such evidence was inadmissible, because it
would tend to alter or vary the written contract. Gill v.
Com. Co., 84 Mo. App. 460. Title may pass by bill of
lading, but right of possession is distinct from that,
and may not. Tuttle v. Con. Co., 136 Mo. App. 315;
Wheless v. Grocer Co., 140 Mo. App. 584. The vendor
has a complete right to retain possession and compel
payment before delivery by carrier to vendee. Wheless

v. Grover Co., 140 Mo. App. 584; Estis v. Harnden, 153 Mo. App. 384. Even issue of bill of lading directly to consignee is not conclusive evidence either of title or right to possession. Smith Co. v. Railroad, 145 Mo. App. 406. (e) Besides: that rule if applicable could only be so to the one carload shipped and could not apply to the carloads never shipped, for what breach respondents sue. *Non constat* that the other cars would be shipped that way. (f) Because the market value, whether at St. Louis or Houston, must be determined by market value on last day for fulfillment of contract: August 31st, not any later date, not even September 1st. Gill v. Com. Co., 84 Mo. App. 461; Heller v. Ferguson, 189 Mo. App. 489; Price v. Vanstone, 40 Mo. App. 211. Nor was time to purchase to be extended after August 31st, although respondents were not residents of St. Louis. Gill v. Com. Co., 84 Mo. App. 461. The prices were fixed arbitrarily by respondents and Graves, without regard to any actual sales. The case in that respect is very much like Com. Co. v. Aaron, 145 Mo. App. 308, 316. The evidence for respondents was solely by deposition. In such case appellate courts will pass upon the credibility of the witness. Neil v. Store Co., 149 Mo. App. 57-8. (2) In the absence of any evidence of market value in St. Louis on August 31st, respondents were entitled to nominal damage only. Wall v. Ice Co., 112 Mo. App. 666; Eaton v. Coal Co., 178 Mo. App. 320; Weber v. Squier, 51 Mo. App. 603. (3) The court erred in refusing instruction No. 2, which was based on a manifest fatal variance between the *allegata* and the *probata*. Cole v. Armour, 154 Mo. 333, 350-1. (4) The court erroneously ruled out evidence of expert railroad witness Amos as to meaning of terms "F. O. B. Houston" and "Fright paid to Houston." Evans v. Mfg. Co., 118 Mo. 553. Such meaning is sought for and adopted by the courts even where the terms are not ambiguous in their ordinary sense. Baer v. Glaser, 90 Mo. App. 294. In a jury-waived case, strict rules of evidence are relaxed. Bloom v. Haas, 130 Mo. App. 128.

*Bates H. McFarland* and *Hutcheson & Hutcheson* for respondent.

(1) The court did not err in refusing the demurrer to the evidence because the measure of plaintiff's damages was the difference between the contract price and the market value at Houston, which was the place of delivery under the contract. As a general rule, delivery to the carrier at the point where the goods are located is delivery to the consignee. But this rule does not prevail (1) if the consignor pays the freight; (2) if the bill of lading is not to be delivered until draft thereto attached has been paid; or (3) if other facts indicate a different intention of the contracting parties. Each of these exceptions to the general rule is applicable to the case at bar, and we shall consider them in their order. (a) When the seller pays the freight the carrier thereby becomes his agent and the presumption is that the delivery is to be made at the place of destination. Williston on Sales, sec. 280, page 406; 35 Cyc. (Sales), p. 174; 24 Amer. & Eng. Ency., pp. 1050, 1071; Hunter v. Kramer, 71 Kans. 473; Brewing Ass'n v. Nipp, 6 Kans. App. 730; Devine v. Edwards, 101 Ill. 141; Murray v. Mfg. Co., 11 N. Y. Suppl. 734; Suit v. Woodhull, 113 Mass. 394; McLaughlin v. Marston, 78 Wis. 677; Berger v. State, 50 Ark. 24; Detroit So. Ry. v. Malcolmson, 144 Mich. 172; Capehart v. Furman, 103 Ala. 671; Miller v. Seaman, 176 Pa. St. 291, 296; State v. Swift & Co., 198 S. W. R. 457, l. c. 458 (St. Louis Ct. of App.); Taussig v. So. Mill & Land Co., 124 Mo. App. 209, l. c. 216. (b) If the bill of lading is not to be delivered until draft thereto attached has been paid, the title does not pass until payment of the draft and the place of payment is the place of delivery. Howard v. Haas, 131 Mo. App. 501; Roaring Fork Potato Growers v. Produce Co., 193 Mo. App. 653, 187 S. W. 617; Moore on Carriers, p. 171; 35 Cyc. (Sales), 195-196, 317 and 321; Bank v. Homeyer, 45 Mo. 149-50; Bergman v. Railway Co., 104 Mo. 85; Milling Co., v. Stanley, 132 Mo. App. 308, 311; Bank v. Milling Co., 163 Mo. App. 135, 143; R. S. 1909, sec. 11957; Grain

Co. v. Grain Co., 171 Mo. App. 354; Aspegren Co. v. Wallerstein Co., 111 Va. 570 (where the contract was actually f. o. b. point of shipment); Dows v. Nat'l Exch. Bank, 91 U. S. 618. When a sale is made for cash on delivery the transaction is not complete until the price is paid, nor does the title pass until then. Strother v. Lumber Co., 200 Mo. 656; Johnson-Brinkmann Co. v. Bank, 116 Mo. 570; Johnston v. Parrott, etc., 92 Mo. App. 199. The exception applicable to C. O. D. shipments of liquor is not supported by sound logic; and apparently arises out of the criminal character of these actions, and the rule of strict construction therein. Tiffany on Sales, page 100; Commonwealth v. Fleming, 130 Pa. St. 162. (c) The intention of the parties controls, and delivery to the carrier is not delivery to the buyer if the circumstances of the transaction indicate a different intention. Thomas v. Ramsey, 47 Mo. App. 85, 98; Fairbank Co. v. Railway Co., 167 Mo. App. 286; 1 Meecham on Sales, sec. 740; Austin Cold Stor. Co. v. Peycke Com. Co., 178 Mo. App. 232; Davis v. Alpha Cement Co., 134 Fed. 278. The evidence in the case at bar clearly shows that the intention of the parties was for delivery at Houston, and the finding of the trial court, sitting as a jury, will not be disturbed on appeal. Thomas v. Ramsey, supra, page 98. Even where the written contract provides for delivery at point of shipment, if the other circumstances of the case show that the real intention of the parties was that the seller was to retain control to the destination, the latter will be deemed the point of delivery. Fairbank Co. v. Railway Co., supra. (d) The verdict of a jury or the finding of a trial judge sitting as a jury in an action at law is conclusive upon the appellate court, even where the evidence is wholly by depositions. State ex rel. v. People's Ice Co., 247 Mo. 205; Handlan v. McManus, 100 Mo. 124, 128; Neill v. Store Co., 160 Mo. App. 518, (overruling Neill v. Store Co., 149 Mo. App. 57, cited by appellant). Where a jury is waived and the case is tried before the court, error seldom lies to the giving or refusing of declarations of law. Neill v. Store

Co., 160 Mo. App. 513. The evidence as to market value at Houston is substantial and entirely uncontroverted, was admitted without objection, and is conclusive on appeal. Smith v. Baer, 166 Mo. 406, 407. The price was not arbitrarily fixed by respondents and Graves, but, on the contrary, respondents did what they could to minimize appellant's loss by procuring as much of the bagging as was available in the near-by market of Galveston (Abs., p. 54). In so doing they observed the rule laid down in Taussig v. Mill Co., 124 Mo. App. 209, 219. (2) The place of delivery under the contract, as interpreted by the parties themselves, was Houston. The price was a Houston price. It was therefore not incumbent on respondents to prove the market value in St. Louis on the date of the breach. See authorities under 1 above. (3) The court did not err in refusing instruction No. 2, because there was no material variance between allegations and proof. The petition does not allege that the contract was in terms "F. O. B. Houston," but that the goods were to be delivered at Houston "freight prepaid" (Abs., p. 5). The term "F. O. B. Houston" is used in another connection in the petition. However, there is no substantial difference between the two expressions. Meecham on Sales, sec. 795; Capehart v. Furman Farm Co., 103 Ala. 671; Chandler Co. v. Radka, 136 Wis. 498. (4) The court did not err in striking out the testimony of the witness Amos as to meaning of the terms "F. O. B." and "Freight paid." (5) The contract price of 8½ cents per yard included all the elements of cost, transportation and profit deemed adequate by the seller to lay it down in Houston. It was therefore a Houston price, and on breach of the contract the buyer was justified in measuring his damage by the Houston price at the time of the breach. Sheffield Furnace Co. v. Hull Coal Co., 101 Ala. 482; Sterling Coal Co. v. Silver Springs Co., 162 Fed. 852.

BECKER, J.—On June 30, 1913, the defendant company, located at St. Louis, Missouri, under its trade name, St. Louis Bag and Burlap Company, sold to the

plaintiffs, located at Houston, Harris County, Texas, 300 bales of bagging known as sugar cloth, the contract of sale being evidenced by correspondence exchanged between the said parties. Plaintiff sued defendant for damages in the sum of $1215, for the alleged failure to deliver 250 of 300 bales purchased. It is alleged that plaintiffs, upon the breach of the contract by defendant, were forced to and did purchase 250 bales of bagging in lieu of that contracted to be delivered by the defendant, but which the defendant failed to deliver.

The answer was a general denial. The case was tried before the court without the intervention of a jury. From a judgment in favor of plaintiffs and against the defendant, in the sum of $1259, being the amount sued for with interest, the defendant brings this appeal.

The written contract relied upon by plaintiffs was evidenced by correspondence. We will set out that portion of the correspondence which we consider material.

Plaintiffs, on June 9, 1913, wrote the defendant company: "Please quote us in lots of 500 to 1000 bales, f. o. b. Houston and Galveston. You understand that we want this bagging to be 44 inches to 46 inches in width and in strips 6 yards long, packed 50 pieces to the bale." Defendant answered on the 11th of June, 1913: "We are pleased to advise you that we can quote you this bagging in 6 yards strips, packing 50 pieces to a bale—bagging to run from 42 inches to 46 inches wide, at 8½ cents per yard, freight paid to Houston, allowing you 3 per cent discount for cash. Please advise by wire if you can use same." On June 30th, plaintiffs wired defendant: "Your letter 11th. Name lowest price 1000 bales, July, August shipment on our order." Defendant answered by wire the same day: "Our price 11th lowest on 300 bales shipment July and August, subject to wire acceptance." Plaintiffs replied on the same day by wire: "Offer 8¼ cents, less 3 per cent on 300 bales mentioned. Wire acceptance." On the same day the defendant replied by wire: "Wire received; our price 8½ cents, less 3 per cent best on cloth; wire acceptance."

Plaintiffs by wire replied on the same day: "Offer accepted." Plaintiffs confirmed this telegram of acceptance by letter; and the defendant in turn sent plaintiffs the following letter of confirmation accepting the order: "June 30, 1913. Street & Co. We beg to acknowledge receipt of your wire of even date and have entered your order for 300 bales of bagging cloth in 6 yard strips to be packed 50 pieces to the bale, cloth to run from 42 inches to 46 inches wide at 8½ cents per yard, freight paid to Houston, allowing you 3 per cent. discount for cash against document. Cloth to be shipped during July and August. . . . ."

Considerable correspondence between the parties was introduced which showed that the plaintiffs were continually urging the defendant to hurry up the order and ship the bagging purchased as quickly as possible. It further appears that the defendant, on July 26th, notified the plaintiffs that it had shipped a car of bagging, giving the car number and the route. However, on August 4th, the defendant, by letter, wrote the plaintiffs that when they, "started to invoice your car we found that our party shipped us 3 yard strips instead of 6. We trust that you can use these this length, otherwise it will cause considerable delay. This car has been on the road now for ten days." Plaintiffs immediately wired, upon receipt of the letter: "Cannot use 3 yard strips. Suggest you take up with H. W. Garrow & Company, Houston, to whom you might sell as patches." The defendant replied by letter of August 5th, acknowledging receipt of the wire, and advising that it had diverted the car and stated that, it would, "be able to let you have a car in the next few days from what information we have."

On August 19, 1913, the defendant did ship one car containing 15,000 yards of the bagging to the defendant, via. the St. Louis, Iron Mountain and Southern Railroad, which car reached Houston, Texas, on August 27th. On August 21st, one of the banks in Houston presented a draft with bill-of-lading for said carload of bagging attached, the draft being drawn by the

defendant on the plaintiffs. Plaintiffs did not pay the draft at once, and gave as their reason that they did not consider, from the terms of the contract, that the goods were to be paid for until they were delivered. They, however, wired defendant on August 21, 1913, to direct the bank to hold the draft until the delivery of the goods. Defendant replied by telegram on the same day: ''Wire received. Contract calls less 3 per cent for cash. Draft should be paid on presentation.'' Plaintiffs replied by wire on the same day; ''Telegram received. Must insist that you wire bank to hold draft for arrival of goods, as we understand shipment has not yet left St. Louis, and we do not intend to pay in advance for the goods.'' To this defendant replied: ''Wire received; contract calls for 3 per cent less for cash; if you are willing to waive discount, will have bank hold draft for arrival. If car has not left St. Louis, fault of the railroad, not ours; same is not being held.'' The plaintiffs answered by wire: ''Answering night letter, will waive the 3 per cent.'' Defendant wrote a letter to plaintiffs on August 22nd, as follows: ''Acknowledging receipt of your wire of even date we have had our bank to advise their correspondent to hold your draft and draft will be with 3 per cent added. We have had the Iron Mountain on the phone and find you are correct, the car has not left St. Louis. Will you kindly advise us where you got this information? We will send you the correspondence from the Iron Mountain showing that the blame lays entirely with them and not with us. As it was our intention to ship these goods over the M. K. & T., you are the ones to blame, as you requested us to route the cars Iron Mountain.''

The car on arrival was inspected and paid for. There was testimony to the effect that the contents of the car did not in all respects conform to the contract, namely, that the cloth itself was not strictly up to the sample originally submitted, and the bales were not of the size agreed upon, namely, the contract called for 300 yards to the bale while the bales in the car

shipped were but half the size stipulated, containing 150 yards to the bale; but plaintiffs, on the whole, were satisfied with the car.

No further bagging was shipped by the defendant to the plaintiffs, and on September 2, 1913, plaintiffs wired defendant: "Shall we buy for your account balance bagging due us. Answer." And on September 4th wired: "You having shipped only 50 bales of our purchase of 300, shipment July—August, we have had to buy for your account balance, and we propose to hold you for the difference in price for failure in complying with your contract." The defendant answered by wire on the same day: "Wire received; see letter third; you refused pay on draft as per contract; we couldn't afford to ship until we know that you would accept the goods; we will not be responsible for any purchase you may make; if you want us to ship you any more cloth, wire." Defendant confirmed this wire by a letter on the same day as follows: ". . . We will not be responsible for any gunny you may buy for our account as we have given you no authority to do so. The very first shipment that we made you you turned down our draft. Still, as we did not want to have any hard feelings, we were willing to go ahead and fill the contract for you. Of course if you are not willing to let us fill the contract, well and good. If you are, we will do so, but may be a little bit delayed, but we think you will be better off to be delayed than to try to force this matter, as, after refusing the car that we did ship you we do not think you have any kick against us for not shipping any more until we found out how we were going to come out on this." Plaintiffs, on September 4th, by letter, notified the defendant that they had bought the balance of the gunny sack bagging, namely, that portion which defendant had failed to ship under the contract which amounted to 75,000 yards; that they had bought the bagging in two lots; one lot of 200 bales, or 60,000 yards, they had bought at 9-7/8 cents per yard, F. O. B., Houston; the other lot 50 bales, or 15,000 yards, at 9-3/4 cents, Galveston, which is equiva-

lent to 9-85/100 cents Houston, and in the letter plain-
tiffs enclosed the bill for the difference between the con-
tract price and the price which plaintiffs had thus.
paid, which aggregated $1215.

The last day for fulfilling the contract was August
31, 1913 and it fell on a Sunday; and it was admitted
September 1st was Labor Day, a holiday; on Septem-
ber 2nd the plaintiffs took an option for 200 bales of
bagging from a Houston concern and exercised this
option on the 4th of September and bought said amount,
and the balance, namely 50 bales, plaintiffs purchased
on September 4th at Galveston. A witness for plaintiffs
testified that the price on the first four days of Septem-
ber of that year on this character of cloth for bagging
was the same, and that the plaintiffs, before purchasing
the bagging for the account of the defendant, obtained
quotations upon the same from Graves & Company in
Houston, and C. F. Schwille & Company in Galveston,
each of which concerns was a large dealer in that partic-
ular commodity, and that the prices paid were the
reasonable value of the goods at the time and place.

Appellant's chief assignment of error is that the
court erred in not sustaining its demurrer to the evi-
dence, and that on the ground that the plaintiffs' dam-
ages, if any, should have been based on the market
value at St. Louis and not at Houston, because delivery
was to take place at St. Louis and not at Houston. The
ingenious argument is made by learned counsel for the
appellant that there is a clear cut distinction and dif-
ference between the terms, "F. O. B., Houston" and
"freight paid to Houston," that "F. O. B. Houston"
would mean the goods would have to be delivered by
the seller of the merchandise in question at Houston,
F. O. B., and the carrier in such event would be the
agent of the seller for delivery of the goods at such
point, whereas the term, "freight paid to Houston,"
means nothing more or less than indicating the destina-
tion, and that appellant would pay the charges, so that
when it delivered to the carrier at St. Louis, freight
charges prepaid, the goods *ipso facto* became the prop-

erty of respondents and the carrier thereby became the agent of respondents for delivery to them at Houston.'' We have searched the adjudicated cases and text books to find a precedent for such a distinction between these terms as is argued exists, but without avail. We are of the opinion that the term, ''F. O. B., Houston,'' and the term, ''freight paid to Houston,'' for the purposes and under the facts in this case are synonymous.

It will be noted that in the letter of June 9, 1913, plaintiffs wrote the defendants: ''Please quote us on lots of 500 and 1000 bales *F. O. B., Houston and Galveston,*'' and that by letter of June 11, 1913, the defendant replied that it was pleased to advise that it could, ''quote this bagging at 8-1/2 cents per yard, *freight paid to Houston,* allowing you 3 per cent discount for cash,'' which offer was finally accepted by the plaintiffs and the acceptance of the order confirmed by defendant by its letter of June 30, 1913, in which the defendant again states the price to be 8-1/2 cents per yard, *''freight paid to Houston,* allowing you 3 per cent discount for cash against document; cloth to be shipped during July and August.'' We have no doubt but that, ''F. O. B., Houston'' and ''freight paid to Houston,'' were considered by both parties as synonymous terms.

The appellant, however, contends that it has adduced sufficient proof to show that the only car of bagging which it shipped the respondents was routed over the St. Louis, Iron Mountain and Southern Railroad at the request of the respondents. It is true the record contains defendant's letter directed to plaintiffs, dated August 22, 1913, which contains the sentence: ''As it was our intention to ship these goods over the M. K. & T., you are the ones to blame as you requested us to route the cars Iron Mountain.'' It is argued that this letter is sufficient to bring the case within the rule that, ''if the purchaser selects the carrier by which the shipment is to be made to the purchaser, the carrier is deemed the purchaser's agent to receive and transport the goods.'' In support of this contention we are re-

ferred to the cases of Gill & Fisher v. Comm. Co., 84
Mo. App. 456; Scharff v. Meyer, 133 Mo. 428, 34 S.
W. 858; Griffith v. K. C. Co., 46 Mo. App. 539 and
Meyer Bros. v. McMahan, 50 Mo. App. 18.

The Gill & Fisher case we find not in point for
there the contract specifically provided, "F. O. B. Q.
cars Kansas City . . . Please load large cars
and 10 per cent. over marked capacity." The seller lived
in Kansas City and the commodity was being shipped
to Baltimore, Maryland, as its destination. The Chicago,
Burlington & Quincy was specifically designated in the
contract as the carrier and the *consignee* was to pay
the freight from Kansas City to destination.

In the Scharff case the Meyer Company, defendant
therein, sugar merchants in the city of New Orleans,
had sold fourteen different lots of sugar to as many
different purchasers in the city of St. Louis. All of
the sugar was shipped on the same boat from the Cora
Plantation, Louisiana. Scharff, et al., the plaintiffs,
creditors of Meyer Company, brought an action by at-
tachment and seized all of the sugar in question as the
property of the defendant, whereupon the Union Na-
tional Bank of New Orleans interpleaded claiming the
fund derived from the sale of the sugar attached, by
reason of having purchased fourteen drafts of the de-
fendant company, one draft covering each of the four-
teen different lots of sugar, to each of which drafts
was attached the corresponding bill-of-lading for such
lot of sugar. Each of the bills-of-lading, it appears,
was made out in the name of the *consignee. Of these
fourteen lots but four of them designated the place
of delivery as St. Louis* and as to them the court (l. c.
448) says: "Under the contracts with respect to lots
numbered 1, 3, 2 and 4, the first two lots were to be
delivered on the levee in St. Louis and the last two in
said city, no other place being named. Notwithstand-
ing the bills-of-lading for these sugars were also made
in favor of the respective consignees, the contracts not
only show that they were to be delivered in St. Louis,
but also show that they were sold at about one cent on

the pound in advance of other sugar shipped at the same time in contracts to be delivered on the vessel, which tended to show, aside from other facts and circumstances in the case, that the consignors retained title thereto and that they were shipped at their risk. If so, while in transit, the carrier was their agent. [Benjamin on Sales (Kerr's Ed.), sec. 925; Dunlop v. Lambert, 6 Cl. & F. 600.] This, however, is a matter depending largely upon the intention of the consignors and a question for the consideration of the court or a jury.''

A careful reading of the Griffith case discloses that the point in question is not therein discussed, whilst the Meyer Bros. case is not in point in that there is no provision that the seller was to pay the freight to destination.

In the instant case not only does the contract specifically provide that the freight to Houston, the destination, shall be paid by the consignor, but the contract is entirely silent as to the selection of any carrier by which the shipment is to be made. The fact that the one car of bagging which was actually shipped by the defendant to the plaintiffs, was shipped over the Iron Mountain, even though the record disclosed that the purchaser had directed shipment by that route, but to which we do not agree, would have no bearing under the facts in this case upon the unshipped portion of the order. Under the contract it is plain that the carrier was not designated therein and the purchaser had no authority to compel the seller to ship by any route which he, the purchaser, might designate.

Williston on Sales, sec. 280, with reference to the question states (page 406): ''Whether by the terms of the contract the seller is authorized to make a final appropriation of the goods to the buyer by delivering them to the carrier at the point of shipment, or whether the duty of the seller is to deliver the goods at their destination, the risk of transportation being upon him, is a question of fact. If the contract specifies that one party or the other is to pay the freight, this almost

certainly indicates the intention of the parties in regard to the matter. If the buyer is to pay the freight, it is a reasonable supposition that he does so because the goods become his at the point of shipment and the carrier is his agent in transporting them. On the other hand, if the seller is to pay the freight, the inference is equally strong that the duty of the seller is to have the goods transported to their ultimate destination and that the carrier is his agent in transporting the goods. Accordingly, if the seller is to pay freight, the presumption is that the property does not pass until the goods have reached their destination.''

In 35 Cyc., 174, we find the following: ''Ordinarily, when goods are to be shipped by the seller and at his expense, to the place of business of the buyer, such place in the place of delivery.'' [See, also, Hunter v. Kramer, 71 Kan. 473; Devine v. Edwards, 101 Ill. 141; Murray v. Mfg. Co., 11 N. Y. Supp. 734; Suit v. Woodhall, 113 Mass. 1. c. 394; McLaughlin v. Marston, 78 Wis. 1. c. 677; State v. Swift & Co., 198 S. W. (Mo. App.) 457, 1. c. 458; Taussig v. So. Mill & Land Co., 124 Mo. App. 209, 1. c. 216, 101 S. W. 602, and cases therein cited.]

There are other facts in the case which tend to show that the point of delivery was Houston, namely, the fact that the contract read: ''Freight paid to Houston, allowing you 3 *per cent discount for cash against document.''* The intention of the parties thereby being shown to be that the bills-of-lading were not to be delivered until the drafts to which they were attached should have been paid. [See Howard v. Haas, 131 Mo. App. 499, 1. c. 501, 109 S. W. 1076; Roaring Fork Potato Growers v. Produce Co., 193• Mo. App. 652, 187 S. W. 617.]

In view of the written contract, together with the other facts in the case, we must rule this assignment of error against the appellant and hold that the court did not err in overruling defendant's demurrer to the evidence. The evidence shows that the delivery was to take place at Houston and not at St. Louis, and there-

fore the market value at Houston and not at St. Louis was the basis of plaintiffs' damages.

As to the point made by the appellant that the respondents failed to establish, by substantial testimony, the market value of the bagging purchased by them for the account of the appellant at Houston, and that the purchases were made on September 4th at Houston and Galveston instead of on August 31st, the last day for the fulfilment of the contract, we hold there is ample testimony to support the finding of the trial court, that plaintiffs had complied with the established rule with reference to such purchases.

We have examined the other assignments of error raised by the appellant but find them without merit and the judgment being for the right party it is accordingly affirmed. *Reynolds, P. J.,* and *Allen, J.,* concur.